**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ARNOLD STEIN and DIANE MILLER, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br>v.<br><br>EDWARD-ELMHURST HEALTH,<br><br>Defendant. | Case No. 1:23-cv-14515<br><br>The Honorable Steven C. Seeger, Judge |

**DEFENDANT EDWARD-ELMHURST HEALTH'S MEMORANDUM IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS


Page

**INTRODUCTION ... 1**

**LAW AND ARGUMENT ... 4**

**I. STANDARD OF REVIEW. ... 4**

**II. STEIN AND MILLER FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER THE FEDERAL WIRETAP ACT. ... 4**

**III. STEIN AND MILLER HAVE NOT ALLEGED A VIOLATION OF ILLINOIS STATUTORY LAW. ... 8**

*A. Stein and Miller Fail to Allege a Cause of Action under the Illinois Eavesdropping Act. ... 9*

*B. Stein and MIller Fail to Allege a Cause of Action under the Illinois Consumer Fraud Act. ... 10*

*C. Stein and Miller Have Failed to Allege a Claim for Injunctive Relief under the Illinois Deceptive Trade Practices Act. ... 14*

**IV. STEIN AND MILLER'S ILLINOIS COMMON LAW CLAIMS ALSO FAIL TO STATE A CLAIM. ... 15**

*A. Stein and Miller's Invasion of Privacy Claim Is Based on an Alleged Disclosure, Not an Intrusion. ... 15*

*B. Stein and Miller Do Not Adequately Allege an Implied Contract under Illinois Law. ... 17*

*C. Stein and Miller's Breach of Confidence and Negligence Claims Are Based in a Breach of Physician-Patient Confidentiality and Should Be Dismissed ... 18*

**CONCLUSION ... 20**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acara v. Banks*,
470 F.3d 569 (5th Cir. 2006) ....................2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................3, 4

*ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*,
282 F. Supp. 3d 1043 (N.D. Ill. 2017) ....................12, 13

*Bates v. State Bar of Az.*,
433 U.S. 350 (1977)....................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................3, 4

*Bell v. City of Chi.*,
835 F.3d 736 (7th Cir. 2016) ....................16

*Benson v. Fannie May Confections Brands, Inc.*,
944 F.3d 639 (7th Cir. 2019) ....................10, 11

*Bigelow v. Virginia*,
421 U.S. 809 (1975)....................6

*BMO Harris Bank, N.A. v. Porter*,
2018 IL App (1st) 171308 (2018)....................15, 16

*Carpenter v. Phillips*,
419 F. App'x 658 (7th Cir. 2011) ....................2

*Castaneda v. Amazon.com, Inc.*,
--- F. Supp. 3d ----, 2023 WL 4181275 (N.D. Ill. 2023)....................4

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018) ....................7

*De Bouse v. Bayer*,
235 Ill. 2d 544 (2009) ....................9

*Desnick v. American Broadcasting Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995) ....................5, 6

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ....13, 14, 17

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ....17

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....7

*Dwyer v. Am. Exp. Co.*,
273 Ill. App. 3d 742, 652 N.E.2d 1351 (1995) ....14

*U.S. ex rel. Garst v. Lockheed-Martin Corp.*,
328 F.3d 374 (7th Cir. 2003) ....1

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....6

*Kaminski v. Elite Staffing, Inc.*,
23 F.4th 774 (7th Cir. 2022) ....16

*Katz-Lacabe v. Oracle Am., Inc.*,
--- F. Supp. 3d ----, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ....6

*Khorloo v. John C. Heath Attorney at Law, PLLC*,
2020 WL 1530735 (N.D. Ill. Mar. 31, 2020)....11

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ....11

*Kljahich v. Whirlpool Corp.*,
2015 WL 8481973 (N.D. Ill. Dec. 10, 2015) ....12

*Kurowski v. Rush System for Health*,
--- F.Supp.3d ----, 2023 WL 4707184 (N.D. Ill. July 24, 2023)....8, 17

*Kurowski v. Rush System for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ....6

*La Salle Nat'l Bank v. Inter'l Ltd.*,
129 Ill. App. 2d 381 (2d Dist. 1970)....16

*Lawlor v. N. Am. Corp. of Ill.*,
2012 IL 112530 (2012) ....13

*Love v. Simmons*,
2024 WL 809107 (N.D. Ill. Feb. 27, 2024) ....3, 4

*Lovgren v. Citizens First Nat. Bank of Princeton*,
126 Ill. 2d 411 (1989) ....................14

*Matthews v. Chicago Transit Authority*,
2016 IL 117638 (2016) ....................15

*Miller v. Motorola, Inc.*,
202 Ill. App. 3d 976, 560 N.E.2d 900 (1990) ....................15

*Oliveira v. Amoco Oil Co.*,
201 Ill. 2d 134 (2002) ....................10

*Packingham v. North Carolina*,
582 U.S. 98 (2017)....................6

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021) ....................2

*Petropoulos v. City of Chicago*,
448 F. Supp. 3d 835 (N.D. Ill. 2020) ....................16

*Popp v. Cash Station, Inc.*,
613 N.E.2d 1150 (Ill. Ct. App. 1992) ....................12

*Reno v. Am. Civ. Lib. Un.*,
521 U.S. 844 (1997)....................6

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. May 21, 2021)....................6

*Rokowsky v. Vericity, Inc.*,
632 F. Supp. 3d 797 (N.D. Ill. 2022) ....................16

*Sabrina Roppo v. Travelers Com. Ins. Co.*,
869 F.3d 568 (7th Cir. 2017) ....................17

*Stewart v. Parkview Hosp.*,
940 F.3d 1013 (7th Cir. 2019) ....................2

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ....................14

*In re Trans Union Corp. Privacy Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004) ....................14

*Trapani Const. Co., Inc. v. Elliot Group, Inc.*,
2016 IL App (1st) 143734 (2016)....................15

*Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*,
425 U.S. 748 (1976) .......... 6

*Zak v. Bose Corp.*,
2020 WL 2762552 (N.D. Ill. May 27, 2020) .......... 9

**Statutes & Rules**

720 ILCS 5/14-1 .......... 8

720 ILCS 5/14-2 .......... 7, 8

815 ILCS 505/2 .......... 10

815 ILCS 505/10 .......... 10

815 ILCS 510/3 .......... 12

18 U.S.C. § 2510 .......... 2

18 U.S.C. § 2511 .......... 4, 5, 7

FED. R. CIV. P. RULE 8 .......... 1

FED. R. CIV. P. RULE 12 .......... 3

## INTRODUCTION

The two named plaintiffs to this case, Arnold Stein and Diane Miller, allege that defendant Edward-Elmhurst violated their privacy rights by using digital analytical tools on Edward-Elmhurst's public web properties, most prominently the Meta Pixel. (Am. Compl. ¶¶ 6-8.) As Stein and Miller put it, most basically: "Unbeknownst to Plaintiffs and Class Members, however, Defendant had embedded the Meta Tracking Pixel (the 'Pixel,' 'Tracking Pixel,' or 'Meta Pixel') on its Web Properties, which automatically transmits to Facebook every click, keystroke and detail about their medical treatment." (*Id.*, ¶ 10.)

These allegations sound a familiar refrain throughout the federal and state courts right now. This is one of five healthcare website privacy cases pending in this court against Chicago-based healthcare providers alone. *See also Michael Krackenberger v. Northwestern Memorial Hospital, et al.*, Case No. 4:22-cv-04203 (N.D. Ill., complaint filed Aug. 10, 2022); *Marguerite Kurowski, et al. v. Rush System for Health*, Case No. 1:22-cv-05380 (N.D. Ill., Sept. 30, 2022); *Sophia Hartley v. University of Chicago Medical Center, et al.*, Case No. 1:22-cv-05891 (N.D. Ill., Oct. 25, 2022); *Patricia Mayer, et al. v. Midwest Physician Administrative Services, LLC d/b/a Duly Health and Care*, Case No. 1:23-cv-03132 (N.D. Ill., filed in Cook Cty. Chancery Court Apr. 10, 2023, *removed* May 18, 2023).

Stein and Miller's amended complaint weighs in at more than 448 paragraphs and spans 103 pages. *But cf. U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud."). Notwithstanding its verbosity, the underlying story Stein and Miller's amended complaint tells is straightforward: Stein and Miller visited Edward-Elmhurst's web properties and source code placed on the web sites caused information regarding their visits, including the links they clicked on and the actions

they took, to be transmitted to Facebook, which in turn then used this information for marketing purposes. (Am. Compl. ¶ 147.) Stein and Miller allege the specific website URLs allegedly transferred in their amended complaint. (*See id.*, ¶¶ 289 (pg. 68), 291 (pg. 69), 301, 303.) [1]

This motion proceeds from the premise that these allegations are true. Moreover, Edward-Elmhurst can concede, for purposes of this motion only, that Stein and Miller have adequately alleged that, in hindsight, Edward-Elmhurst's action may have violated HIPAA. (Am. Compl. ¶¶ 32-35, 188-219, 263-277; *see also id.*, ¶ 32 ("The disclosure of Plaintiffs' and Class Members' Private Information via the Meta Pixel contravenes the letter and spirit of the Health Insurance Portability and Accountability Act of 1996 ('HIPAA').").)

The question that remains is how does this translate into stating a plausible claim under either federal or Illinois law. The Seventh Circuit, like every other federal circuit court to address the question, has held that HIPAA creates no private right of action, whether express or implied. *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Carpenter v. Phillips*, 419 F. App'x 658, 659 (7th Cir. 2011); *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (same; collecting cases); *see also Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) ("Congress did not intend for private enforcement of HIPAA.").

Stein and Miller attempt to work their way around this problem by asserting numerous different claims under Illinois law, and one claim under the federal Wiretap Act, predominantly grounded in these alleged violations of HIPAA. Stein and Miller's amended complaint should be dismissed with prejudice because these claims each fail to state a claim upon which relief can be granted. This is so for the following reasons:

[1] There are three paragraphs numbered 289 in plaintiffs' amended complaint. (*See id.* at pgs. 67, 71.) There are also at least three paragraphs numbered 76. (*Id.* at pgs. 17, 19.) Where there is an overlapping allegation in the amended complaint, this brief will also cite to the page number for that allegation.

1. The federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*, provides that it is not illegal for a party to intercept the party's own communications, and Stein and Miller have not plausibly alleged that the tortious or criminal conduct exception to this one-party consent rule should apply.
2. Private conversations under the Illinois Eavesdropping Act only applies to oral communications and for electronic communications the statute sets forth a one-party consent rule with no tortious or criminal conduct exception.
3. Stein and Miller do not allege personal deception or actual, pecuniary loss for their Illinois Consumer Fraud Act claim.
4. The Illinois Deceptive Trade Practices Act only provides for claims for injunctive relief and Stein and Miller concede that Edward-Elmhurst has removed the Meta Pixel from Edward-Elmhurst's website.
5. Stein and Miller's invasion of privacy claim is based on an alleged disclosure, not an alleged intrusion.
6. Stein and Miller have not alleged the basic requirements for pleading an implied in fact contract under Illinois law under *Twombly* and *Iqbal*.
7. Stein and Miller's breach of confidence and negligence claims should be dismissed because Illinois law does not recognize a claim for alleged breach of physician-patient confidentiality in tort.

Accordingly, for these and the other reasons set forth below, the Court should dismiss Stein and Miller's amended complaint with prejudice in its entirety under Rule 12(b)(6).

## LAW AND ARGUMENT

### I. STANDARD OF REVIEW.

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case." *Love v. Simmons*, 2024 WL 809107, at *3 (N.D. Ill. Feb. 27, 2024). "In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor." *Id.*

"To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678); *Castaneda v. Amazon.com, Inc.*, --- F. Supp. 3d ----, 2023 WL 4181275, at *4 (N.D. Ill. 2023) (same).

### II. STEIN AND MILLER FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER THE FEDERAL WIRETAP ACT.

Stein and Miller's first claim in their amended complaint is for an alleged violation of the federal Wiretap Act. (Am. Compl. ¶¶ 335-371.) The gravamen of this claim is as follows: "Edward-Elmhurst transmits the content of Plaintiffs' and the Class Members' communications to Meta through the surreptitious redirection of those communications from Plaintiffs' and the Class members' computing devices." (*Id.*, ¶ 345; *see also id.* ¶¶ 342-344 (same).)

This claim runs into the statute's "one-party" consent rule: Congress made it plain that under the Wiretap Act it is not unlawful for a party to intercept the party's own communications, unless the party's expressed purpose for doing so at the time of the recording was to commit a crime or a tort. Specifically, the statute provides as follows:

> "It shall *not* be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication *where such person is a party to the communication*," *unless* "such communication *is* intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

18 U.S.C. § 2511(2)(d) (emphasis added).

Moreover, in order to violate the statute through an alleged unlawful disclosure, as Stein and Miller claim here (Am. Compl. ¶ 351), there must have been an unlawful interception of some communication in the first instance. *See* 18 U.S.C. § 2511(1)(c); *See Jurgens v. Build.com*, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017) (holding that an "interception is a necessary element for each type of violation") (quoting *Bruce v. McDonald*, 2014 WL 931522, at *2 (M.D. Ala. Mar. 10, 2014)); *Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018) ("Since claims under subsection (c) and (d) are predicated on a violation of subsection (a), the Court considers all section 2511 claims together."); *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (same).

Stein and Miller acknowledge both the one-party consent rule and the criminal or tortious conduct exception in their amended complaint. (Am. Compl. ¶¶ 351, 353.) From this foundation, Stein and Miller detail numerous laws, common law and statutory, Edward-Elmhurst allegedly might have violated in order to plead why the exception should apply. (*Id.*, ¶¶ 351-362.)

The Southern District of New York considered and rejected this same application of the exception in *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 515-19 (S.D.N.Y. 2001). The plaintiffs there attempted "to meet § 2511(2)(d)'s 'purpose' requirement by arguing that their six non-Wiretap Act claims against DoubleClick 'plead conduct that has underlying it a tortious purpose and/or that translates into tortious acts." *Id.* at 515. "In other words, by virtue of its tortious acts, DoubleClick must have had a tortious purpose." *Id.*

The court rejected this argument. The court held "Section 2511(2)(d)'s legislative history makes clear that the 'criminal' or 'tortious' purpose requirement is to be construed narrowly, covering only acts accompanied by a specific contemporary intention to commit a crime or tort." *Id.* The court further held "the legislative record suggests that the element of 'tortious' or 'criminal' *mens rea* is required to establish a prohibited purpose under § 2511(2)(d)." *Id.*

For these reasons, the court held the plaintiffs had not adequately alleged their Wiretap Act claim. "DoubleClick's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial websites." *Id.* at 519. "If any of its practices ultimately prove tortious, then DoubleClick may be liable for the resulting damage." *Id.* "However, a culpable mind does not accompany every tortious act." *Id.*

The court concluded: "In light of the abundant evidence that DoubleClick's motivations have been licit and commercial and the utter lack of evidence that its intent has been tortious, we find as a matter of law that plaintiffs have failed to allege that DoubleClick has acted with a 'tortious' purpose." *Id.*; *see also In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. May 21, 2021); *Katz-Lacabe v. Oracle Am., Inc.*, --- F. Supp. 3d ----, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023) (each holding an alleged financial motive was not enough for the tortious or criminal conduct exception to apply).

In making this holding, the Southern District of New York relied on the Seventh Circuit's opinion in *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1353-54 (7th Cir. 1995). The *Desnick* court affirmed the dismissal of a federal Wiretap Act claim under the exception based on the following analysis: "Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely." *Id.* "But

there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming the plaintiffs by charging tampering with the glare machine." *Id.* "The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers." *Id.*

These holdings from *Desnick* and *In re DoubleClick* apply here. Even at their worst, Stein and Miller allege that Edward-Elmhurst used the marketing tools at issue for "marketing and profits": "The sole purpose of the use of the Meta Pixel on Defendant's Web Properties was marketing and profits." (Am. Compl. ¶ 278; *id.*, ¶¶ 21-22, 29, 51, 69, 92, 137, 281 (all same); *see also id.*, ¶ 85 (alleging "[t]he Meta Pixel and CAPI are routinely used to target specific customers by utilizing data to build incredibly fulsome and robust profiles for the purposes of retargeting and future marketing") (emphasis added).

As set forth above, numerous courts have held that merely taking action for financial purposes is not sufficient to invoke the exception. To the contrary, even commercial speech remains an act of speech, protected by the First Amendment. *See Bigelow v. Virginia*, 421 U.S. 809, 825 (1975) (recognizing commercial speech as protected speech; "[t]he advertisement published in appellant's newspaper did more than simply propose a commercial transaction. It contained factual material of clear 'public interest.'"); *Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748, 765 (1976) (same; "the free flow of commercial information is indispensable"); *Bates v. State Bar of Az.*, 433 U.S. 350, 376-77 (1977) (same; "Advertising is the traditional mechanism in a free-market economy for a supplier to inform a potential purchaser of the availability and terms of exchange.").

This is particularly so on the Internet. As the United States Supreme Court has held: "While in the past there may have been difficulty in identifying the most important places (in a

spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forum of the Internet' in general, and social media in particular." *Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) (quoting *Reno v. Am. Civ. Lib. Un.*, 521 U.S. 844, 868 (1997)).

It may be that Stein and Miller can ultimately show that Edward-Elmhurst's actions crossed the privacy threshold into a potential legal violation, including even of HIPAA itself. *Compare Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 489 (1975) (holding that, under the facts at issue, the First Amendment precluded an invasion of privacy claim; "Because the gravamen of the claimed injury is the publication of information, whether true or not, the dissemination of which is embarassing or otherwise painful to the individual, it is here that claims of privacy most directly confront the constitutional freedoms of speech and press.").

But that would not in turn mean that Stein and Miller have also adequately stated their federal Wiretap Act claim grounded in this alleged legal violation, notwithstanding Judge Kennelly's recent decision to the contrary, with which Edward-Elmhurst respectfully disagrees. *Kurowski v. Rush System for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (recognizing "HIPAA-exception-to-the-party exception"); *but cf. Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) (rejecting argument that tortious or criminal conduct exception should apply to alleged internet tracking; "This too fails because Defendants did not intercept communications 'for the purpose' of committing a crime or tort.").

## III. STEIN AND MILLER HAVE NOT ALLEGED A VIOLATION OF ILLINOIS STATUTORY LAW.

Counts II through IV of Stein and Miller's amended complaint allege violations of Illinois state statutory law. (Am. Compl. ¶¶ 357-371 (Illinois Eavesdropping Act); *id.*, ¶¶ 372-392 (Consumer Fraud Act); *id.*, ¶¶ 393-405 (Deceptive Trade Practices Act).) These claims fail

to state a claim for relief can be granted and thus should be dismissed under Rule 12(b)(6) for the reasons stated in this section of our brief.

**A. Stein and Miller Fail to Allege a Cause of Action under the Illinois Eavesdropping Act.**

Stein and Miller's claim under the Illinois Eavesdropping Act consists of two distinct parts. Stein and Miller first allege that Edward-Elmhurst violated 720 ILCS 5/14-2(a)(2) of the statute. (Am. Compl. ¶ 358, pg. 88.) This provision provides that a person or entity violates the Act when he or she, "knowing and intentionally," "[u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any *private conversation*," "unless he or she does so with the consent of all other parties *to the private conversation*," 720 ILCS 5/14(a)(2) (emphasis added).

Under 720 ILCS 5/14-1(d), however, the term "private conversation" is limited to oral communications, which provision defines "private conversation" to mean "any *oral communication* between 2 or more persons." *Id.* (emphasis added); *see also Angelo v. Moriarty*, 2016 WL 640525, at *3-4 (N.D. Ill. Feb. 8, 2016) (analyzing oral communications provision of the Eavesdropping Act). The provision also therefore does not apply to Stein and Miller's allegations in this case, which does not involve any oral communications. (Am. Compl. ¶ 127 (alleging "Defendant's Pixel intercepts and discloses to Facebook both the 'characteristics' of individuals' communication on the Edward-Elmhurst Website (*i.e.*, their IP addresses, Facebook ID, cookie identifiers, device identifiers and account numbers) and the 'content' of these communications (*i.e.*, the URLs, buttons, links, pages and tabs they view and the information entered into the Website's forms").).

Second, Stein and Miller allege Edward-Elmhurst violated section 720 ILCS 5/14-2(a)(5) of the statute. (Am. Compl. ¶ 359, pg. 88.) This provision deals with both electronic

communications and oral communications. *See* 720 ILCS 5/14-2(a)(5) (prohibiting the use or disclosure of "any information which he or she knows or reasonably should know "was obtained from a private conversation *or* private electronic communication in violation of this Article").

The issue here, however, is that the private electronic communications violation provision of the Illinois Eavesdropping Act sets forth a one-party consent rule. *See* 720 ILCS 5/14-2(a)(3) 720 Ill. Stat. § 5/14-2 (providing that a "person commits eavesdropping when he or she knowingly and intentionally . . . (3) [i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication *to which he or she is not a party*") (emphasis added). Moreover, there is no tortious or criminal conduct exception to the statute. *See Kurowski*, 2023 WL 4707184, at *12 ("unlike the federal Wiretap Act, the Illinois statute does not have a criminal or tortious exception to the party exception").

For these reasons, Stein and Miller's allegations fail to state a claim under the Illinois Eavesdropping Act, and Count II of their amended complaint should be dismissed. *See also Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) (dismissing Illinois Eavesdropping Statue claim; "Because Bose was a party to the communications, it cannot be held liable under the Wiretap Act or the Eavesdropping Statute.").

### B. Stein and Miller Fail to Allege a Cause of Action under the Illinois Consumer Fraud Act.

Count III of Stein and Miller's amended complaint next alleges a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act. (Am. Compl. ¶¶ 372-392.) The gravamen of this claim is as follows: "Edward-Elmhurst's practice of disclosing Plaintiffs' and other Class Members' personally identifiable data and re-directing their communications to third parties without authorization, consent or knowledge is a deceptive, unfair and unlawful trade act or practice in violation of 815 ILCS § 505/2." (*Id.*, ¶ 380.)

As an initial matter, to the extent that Stein and Miller's claims are based on alleged disclosures to Google (*id.*, ¶¶ 179, 189, 196, 198, 273-274), Edward-Elmhurst fully disclosed its use of Google Analytics on the website: "**Google Analytics**. This site may collect data that is non-personally identifiable using first- and third-party cookies for demographics and other behavioral information as a part of an advertising or remarketing program." (Am. Compl., Ex. A at pg. 1/3.) "Users may opt out of Google Analytics for Display Advertising through their browser settings or by adding an Opt-Out Browser Add-on." (*Id.*)

Stein and Miller will claim that the website privacy policy made no such similar disclosure with respect to Facebook. On this point Stein and Miller run into a separate problem, however. The Illinois Supreme Court has held, repeatedly, that a plaintiff must allege that she has *personally* been deceived in order to state a Consumer Fraud Act deception claim. *See De Bouse v. Bayer*, 235 Ill. 2d 544, 550 (2009) (collecting cases; "[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause."); *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 155 (2002) ("[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived.").

Stein and Miller's amended complaint contains numerous pages of allegations regarding their individual claims. (Am. Compl. ¶¶ 286-314, pgs. 67-77.) Nowhere in these allegations, however, do Stein and Miller claim that they ever personally were deceived by any of Edward-Elmhurst's alleged deceptions, even assuming these deceptions ever might have occurred. Stein and Miller's Consumer Fraud Act claim grounded in alleged deceptive acts or practices should

be dismissed for this reason alone. *See Oliveira*, 201 Ill. 2d at 155 (affirming dismissal; "Because plaintiff does not allege that he saw, heard or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance.").

Stein and Miller's Consumer Fraud Act claim fails in its entirety, for both alleged consumer unfairness and for alleged consumer deception, for this additional reason: their failure to allege actual damages. As the Illinois Supreme Court held: "Unlike an action brought by the Attorney General under section 2, which does not require that 'any person has in fact been misled, deceived or damaged,' (815 ILCS 505/2 (West 1996)), a private cause of action under section 10(a) requires proof of 'actual damage' (815 ILCS 505/10a(a))." *Oliviera*, 201 Ill.2d at 149; *see also, e.g., Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (same).

This actual damages requirement in turn has a very specific meaning: "actual pecuniary loss." *See Washington v. Hyatt Hotels Corp*., 2020 WL 3058118, at *7 (N.D. Ill. June 9, 2020) ("[u]nder the ICFA, a plaintiff must plead actual pecuniary loss"); *Benson*, 944 F.3d at 647 ("must plausibly plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss"); *see also Khorloo v. John C. Heath Attorney at Law, PLLC*, 2020 WL 1530735, at *2 (N.D. Ill. Mar. 31, 2020) (quoting *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (same).

Stein and Miller cannot meet this requirement under either prong of their statutory claims here. Stein and Miller's amended complaint contains a listing of the alleged harms they have suffered, including to their "interest in privacy," that Edward-Elmhurst allegedly "took something of value from Plaintiffs and other Class Members," "diminished the value of

Plaintiffs' and other Class Members' personal information," and that "Plaintiffs and other Class Members did not get the full value of the medical services for which they paid" (Am. Compl. ¶ 391(a), (d), (e), (f).)

Stein and Miller cannot deny this essential point, however: Edward-Elmhurst's "web properties" are free for the public and patients alike; they cost nothing to use. The only actual loss that Stein and Miller allege they have suffered anywhere in their amended complaint is an alleged loss of privacy, which is not the purview of the ICFA. *See Khorloo*, 2020 WL 1530735, at *2 (rejecting ICFA claim for damages based on alleged loss of privacy; "It seems unlikely that the statute allows plaintiffs to recover damages for privacy violations because the ICFA is concerned with fraudulent or unfair advertising, not with individual privacy rights.").

Moreover, even outside this context, the Seventh Circuit has repeatedly rejected each of Stein and Miller's damages theories as being cognizable, even to provide federal standing to sue, including most recently in *Dinerstein v. Google, LLC*, 73 F.4th 502, 517-18 (7th Cir. 2023) (benefit of the bargain ("overpayment") and loss value); *Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 912-13 (7th Cir. 2017) (claimed lost property value of personal information; "This is gibberish."); *Remijas v. Nieman Marcus Grp., LLC*, 794 F.3d 688, 694-95 (7th Cir. 2015) (stating "we are dubious" that overpayment theory could provide standing in data security case; distinguishing prior case law because "[i]mportantly, many of those cases involve products liability claims against defective or dangerous products"); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 969 (7th Cir. 2016) (same); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018) (rejecting claim for overpayment damages where plaintiff "does not contend that any of the items she purchased was defective or that Barnes & Noble promises any particular level of security, for which she paid").

### C. Stein and Miller Have also Failed to Allege a Claim for Injunctive Relief under the Illinois Deceptive Trade Practices Act.

Stein and Miller's final statutory count against Edward-Elmhurst is for an alleged violation of the Illinois Uniform Deceptive Trade Practices Act. (Am. Compl. ¶¶ 393-405.) As with the Consumer Fraud Act count, here too Stein and Miller allege that "Edward-Elmhurst's practice of disclosing Plaintiffs' and other Class Members' personally identifiable data and re-directing their communications to third parties without authorization, consent or knowledge is a deceptive trade practice in violation of 815 ILCS § 510/2(a)." (*Id.*, ¶ 396.)

Stein and Miller seek to collect actual damages on this count as well. (*Id.*, ¶¶ 400-402.) It is understood, however, that the only permissible relief under the statute is for injunctive relief. *See* 815 ILCS 510/3 (Injunctive relief). As the Appellate Court has held: "The purpose of the DTPA is 'the enjoining of trade practices which confuse or deceive the consumer, or which unjustly injure the honest businessman and prevent him from receiving his just rewards from effective advertising and consumer satisfaction.'" *Popp v. Cash Station, Inc.*, 613 N.E.2d 1150, 1156 (Ill. Ct. App. 1992) (quoting Ill. Ann. Stat., ch 121 ½, Prefatory Illinois Notes, at 238 (Smith-Hurd supp. 1992).)

This holding from *Popp* applies to Stein and Miller's amended complaint. As Stein and Miller acknowledge, "Edward-Elmhurst has removed the Pixel from all its Web Properties." (Am. Compl. ¶ 287, n.87, pg. 70; *id.*, at ¶ 305, n.88 (same); *id.*, ¶ 10, n.4 (only alleging "research shows that the Meta Pixel was embedded in Defendant's Portal at least until June 2022").) Thus also, at this point, there is nothing for the Court to enjoin. The prior practices that allegedly violated Stein and Miller's privacy rights are no longer ongoing, under their own allegations.

Stein and Miller's Deceptive Trade Practices Act claim should therefore be dismissed. *See also Kljahich v. Whirlpool Corp.*, 2015 WL 8481973, at *4 (N.D. Ill. Dec. 10, 2015) ("[i]n

order to maintain a consumer action under the IDTPA, the consumer must 'allege facts which would indicate that he is likely to be damaged in the future.'") (quoting *Popp*, 613 N.E.2d at 1157)); *see also ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) (same; holding "[t]he likelihood of future harm occurring absent an injunction is an element of liability on the claim, not merely a separate element of damages").

## IV. STEIN AND MILLER'S ILLINOIS COMMON LAW CLAIMS ALSO FAIL TO STATE A CLAIM.

In addition to their four statutory counts, Stein and Miller also allege four counts under the Illinois common law. (Am. Compl. ¶¶ 406-448.) These claims are for (1) invasion of privacy – intrusion upon seclusion (*id.*, ¶¶ 414-424); (2) breach of implied contract (*id.*, ¶¶ 425-431); (3) breach of confidence (*id.*, ¶¶ 405-413); and (4) general negligence (*id.*, ¶¶ 432-448).

### A. Stein and Miller's Invasion of Privacy Claim Is Based on an Alleged Disclosure, Not an Intrusion.

To take Stein and Miller's invasion of privacy claim by alleged intrusion upon seclusion claim first, Stein and Miller bring the claim under the wrong branch of the tort. *See Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 33 (2012) (noting "the four branches of the invasion of privacy tort found in the Restatement (Second) of Torts § 652B").

This is so because the privacy harm that Stein and Miller claim flows from an alleged disclosure, not from an alleged intrusion. As Stein and Miller allege even in their invasion of privacy count itself: "Plaintiffs and Class Members communicated sensitive and protected medical information and individually identifiable information that they intended for only Defendant to receive and that they understood Defendant would keep private." (Am. Compl. ¶ 416; *see also id.*, ¶ 417 (same; "Defendant's *disclosure* of the substance and nature of those communications *to third parties* without the knowledge and consent of Plaintiffs and Class Members is an intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion.").

This is not an intrusion upon seclusion claim under Illinois law. *See Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020), *aff'd* 73 F.4th 512-13. In that case, plaintiffs attempted to assert an intrusion upon seclusion claim against both the University of Chicago and Google "because of the University's disclosure and Google's receipt of his PHI." *Id.* The court rejected the claim, because it was based on the wrong invasion of privacy theory: "The Illinois Supreme Court has explained that 'the core of this tort is the offensive prying into the private domain of another' and that '[*t*]*he basis of the tort is not publication of publicity*.'" *Id.* (quoting *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill. 2d 411, 417 (1989) (emphasis added). "Examples of such 'offensive prying,'" the court continued, "are 'invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and persistent and unwanted telephone calls.'" *Id.*

Based on this rationale, the court held that "[t]he 'intrusion' that Plaintiff alleges took place here is unlike these examples." *Id.* "In fact, a court in this district has held that such disclosures of private personal information 'do not support a claim for unauthorized intrusion.'" *Id.* (citing *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004) (holding same; "it is the intrusion itself that creates liability, not any subsequent publication or disclosure")). This same rationale applies here. The basis for Stein and Miller's amended complaint is that Stein and Miller allegedly voluntarily visited Edward-Elmhurst's web properties, and that Edward-Elmhurst subsequently violated alleged privacy rights by *disclosing* Stein and Miller's internet search information to Facebook. (Am. Compl. ¶¶ 258, 262.)

This is not an intrusion upon seclusion claim under Illinois law. *See also see also Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) (holding that "under *Lovgren,* a plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than intrusion").

### B. Stein and Miller Do Not Adequately Allege an Implied Contract under Illinois Law.

Count VII of Stein and Miller's amended complaint asserts a claim for breach of implied contract. (Am. Compl. ¶¶ 425-431.) As Stein and Miller put it: "When Plaintiffs and Class Members provided their Private Information to Defendant in exchange for services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Private Information without consent." (*Id.*, ¶ 426.)

For this claim, Stein and Miller do not specifically plead anything, much less a meeting of the minds as to any particular set of terms. This is a crucial omission, because under Illinois law "[a] contract implied in fact is a 'true contract,' under which the parties set the terms and establish the bounds of their liability." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 93 (2016). This means that an implied in fact contract must contain "all of the elements of a contract," including "offer, acceptance, and consideration," through which a court can ascertain the requisite "meeting of the minds." *BMO Harris Bank, N.A. v. Porter*, 2018 IL App (1st) 171308, ¶ 53 (2018); *see also Trapani Const. Co., Inc. v. Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 42 (2016) (same).

For these reasons, "[i]f a binding contract is going to come into being – other than a contract implied in law or quasi-contract – it is essential that the parties to the agreement have a meeting of the minds, and that they truly assent to the same things in the same sense on all of its essential terms and conditions." *La Salle Nat'l Bank v. Inter'l Ltd.*, 129 Ill. App. 2d 381, 394 (2d Dist. 1970); *see also BMO Harris Bank*, 2018 IL App (1st) 171308 ("[T]he only difference between an express contract and an implied in fact contract is that an implied contract is inferred from the facts and conduct of the parties, rather than from an oral or written agreement.").

Stein and Miller's amended complaint does not attempt to meet these basic pleading requirements for an implied in fact contract claim, but instead sets forth a "formulaic recitation" of the elements for the claim. (Am. Compl. ¶¶ 425-431.) This is insufficient to state a claim under Rule 12(b)(6). *See Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016)); *Petropoulos v. City of Chicago*, 448 F. Supp. 3d 835, 840 (N.D. Ill. 2020) ("As always, conclusory allegations and formulaic recitations of the elements of a claim aren't enough.") (citations omitted); *Rokowsky v. Vericity, Inc.*, 632 F. Supp. 3d 797, 811 (N.D. Ill. 2022) (same).

### C. Stein and Miller's Breach of Confidence and Negligence Claims Are Based on Breach of Physician-Patient Confidentiality and Should Be Dismissed.

The basis for plaintiffs' breach of confidence and negligence claims is essentially the same; for both claims plaintiffs allege that Edward-Elmhurst had a duty to maintain the confidentiality of their personal health information. (Am. Compl. ¶ 407 (breach of confidence; "Medical providers have a duty to their patients to keep non-public medical information confidential."); *id.*, ¶ 435 (negligence; "Defendant's duty to use reasonable measures under HIPAA required Defendant to 'reasonably protect' confidential data from 'any intentional or unintentional use or disclosure' and to 'have in place appropriate administrative, technical, and physical safeguards to protect the privacy of [PHI].'") (quoting 45 C.F.R. § 164.530(c)(1)).)

Moreover, "[c]ontrary to its duties as a medical provider and its express promises of confidentiality, Defendant installed its Pixel and CAPI to disclose and transmit Plaintiffs' and other Class Members' Communications with Defendant, including Private Information and the contents of such information." (*Id.*, ¶ 409; *see also id.*, ¶ 440 (negligence; "Defendant knew or should have known that their unauthorized disclosure of highly sensitive Private Information was a breach of their duty to collect and safely store such information.").)

Stated more plainly, the core of both counts is a common law claim under Illinois law grounded in an alleged breach of physician-patient confidentiality. (*See id.*, ¶ 413(c) ("Defendant eroded the essential confidential nature of the provider-patient relationship."); *id.*, ¶ 412 ("The harm arising from a breach of provider-patient confidentiality includes erosion of the essential confidential relationship between the healthcare provider and patient."); *id.*, ¶ 445 ("Plaintiffs' and Class Members' communications with Defendant about sensitive Private Information and their Status as patients of Defendant were not matters of general knowledge.").)

Illinois, however, has not recognized an independent tort claim for breach of physician-patient confidentiality under Illinois common law. Chief Judge Pallmeyer specifically declined the invitation to recognize the claim in the *Dinerstein* case, explaining that the Seventh Circuit "consistently ha[s] held that it is not [a district court's] role to break new ground in state law." *Dinerstein*, 484 F. Supp. 3d at 594-95 (citing *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 596 (7th Cir. 2017)) (internal quotation marks omitted).

As set forth above, the Seventh Circuit affirmed the decision on standing grounds but also did not disagree with this conclusion: "[W]e see no reason to disturb the judge's decision not to recognize a novel claim for breach of medical confidentiality. Illinois Courts have not yet weighed in on the issue, and it is not our role to breach new ground in state law." *Dinerstein*, 73 F.4th at 523, n. 4 (quotation omitted). The Court should reach the same conclusion here and dismiss Stein and Miller's negligence and breach of confidence counts with prejudice. *See also Kurowski v. Rush System for Health*, --- F.Supp.3d ----, 2023 WL 4707184, at *5 (N.D. Ill. July 24, 2023) ("As far as the Court is aware, a common law cause of action for breach of confidentiality remains unavailable in Illinois, and Kurowski has not offered any justification for the Court to 'breach new ground' here by recognizing one.").

## CONCLUSION

The Court should dismiss Stein and Miller's amended complaint with prejudice for failure to state a claim for which relief can be granted under Rule 12(b)(6).

Dated: March 19, 2024

Respectfully submitted,

**EDWARD-ELMHURST HEALTH**

By: /s/ *David Carney*

Bonnie Keane DelGobbo
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, IL 60606
(312) 416-6200

David Carney
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200
dcarney@bakerlaw.com

*Counsel for defendant Edward-Elmhurst Health*