**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ARNOLD STEIN and DIANE MILLER, *individually and on behalf of all others similarly situated,*

Plaintiffs,

v.

EDWARD-ELMHURST HEALTH,

Defendant.

Case No. 23-cv-14515
Judge Steven C. Seeger

**JURY TRIAL DEMANDED**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**

**ALMEIDA LAW GROUP LLC**
David S. Almeida
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com

**STEPHAN ZOURAS, LLC**
James B. Zouras
222 W. Adams St, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 f
jzouras@stephanzouras.com

*Counsel for Plaintiffs & the Classes*

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

FEDERAL RULE 12(b)(6) STANDARD .......... 5

ARGUMENT .......... 5

I. PLAINTIFFS PLAUSIBLY ALLEGE DEFENDANT'S VIOLATION OF THE FEDERAL WIRETAP STATUTE. .......... 5

A. Plaintiffs Plausibly Allege that Defendant Intercepted their Communications. .......... 6

B. The Party Exception Does Not Apply Because Plaintiffs Allege that Edward-Elmhurst Committed a Crime or Tort. .......... 7

C. Plaintiffs Allege that Edward-Elmhurst Committed an Independent Criminal or Tortious Act. .......... 8

II. PLAINTIFFS STATE A VIABLE CLAIM UNDER THE ILLINOIS EAVESDROPPING ACT. .......... 13

III. PLAINTIFFS STATE A VIABLE NEGLIGENCE CLAIM UNDER ILLINOIS LAW. .......... 15

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Angelo v. Moriarty*,
2016 WL 640525 (N.D. Ill. Feb. 18, 2016) .......... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bazile v. Fin. Sys. of Green Bay, Inc.*,
983 F.3d 274 (7th Cir. 2020) .......... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Bogenberger v. Pi Kappa Alpha Corp., Inc.*,
2018 IL 120951 .......... 17

*Cannon v. City of Anna, Illinois*,
2023 WL 2349344 (S.D. Ill. Mar. 3, 2023) .......... 4, 15

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 8

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) .......... 14

*Cowper v. Nyberg*,
2015 IL 117811 .......... 16

*Denius v. Dunlap*,
209 F.3d 944 (7th Cir. 2000) .......... 15

*Derfus v. City of Chicago*,
42 F. Supp. 3d 888 (7th Cir. 2014) .......... 5

*Desnick v. Am. Broad. Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995) .......... 8, 10, 11

*Deteresa v. Am. Broadcasting Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) .......... 7

*Doe v. Meta Platforms, Inc.*,
2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......... 7

*Doe v. Smith*,
429 F.3d 706 (7th Cir. 2005) .......... 13

*E.H. v. Meta Platforms, Inc.*,
2024 WL 557728 (N.D. Cal. Feb. 12, 2024) .......... 4

*Flores v. AON Corp.*,
2023 IL App (1st) No. 230140.......... 16, 17

*Goodman v. Illinois Dep't of Fin. & Pro. Regul.*,
430 F.3d 432 (7th Cir. 2005) .......... 12

*Grant v. South Roxana Dad's Club*,
381 Ill.App.3d 665 (2008) .......... 16

*Henyard v. MV Transportation*,
2019 WL 1399953 (N.D. Ill. Mar. 28, 2019).......... 14, 15

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) .......... 16

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001).......... 10, 11

*In re Google Inc. Cookie Placement Cons. Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015).......... 5, 8

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023).......... 3, 6, 13

*In Re Meta Healthcare Pixel Litig.*,
2024 WL 333883 (N.D. Cal. Jan. 29, 2024) .......... 4

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 3, 8, 12

*Jackson v. Blitt & Gaines, P.C.*,
833 F.3d 860 (7th Cir. 2016) .......... 3

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024).......... 3, 4, 9

*Krywin v. Chicago Transit Authority*,
238 Ill.2d 215 (2010) .......... 17

*Kurowski v. Rush Sys. for Health*,
2023 WL 4707184 (N.D. Ill. July 24, 2023) .......... 15

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .......... 3, 5, 9, 12

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260 (D. Minn. Mar. 28, 2024) .......... 4

*Platt v. Brown*,
872 F.3d 848 (7th Cir. 2017) .......... 5

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) .......... 5

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*,
783 F.3d 607 (7th Cir. 2015) .......... 14

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .......... 6

*Wittmeyer v. Heartland Alliance for Human Needs & Rights*,
2024 WL 182211 (N.D.Ill. Jan. 17, 2024) .......... 16

*Zak v. Bose Corp.*,
2020 WL 2762552 (N.D. Ill. May 27, 2020) .......... 15

**Statutes**

18 U.S.C. § 2511 *et seq*. .......... 3, 7

42 U.S.C. § 1320d-6(A)-(B) .......... 9

720 ILCS 5/14-2 .......... 13, 14

**Rules**

Fed. R. Civ. P. 15(a)(2) .......... 18

## PRELIMINARY STATEMENT

By its Motion to Dismiss, Edward-Elmhurst Health ("Edward-Elmhurst" or "Defendant") does ***not*** deny using tracking tools—including the Meta Pixel—to collect its patients' personally identifiable information ("PII") and protected health information ("PHI," and with PII, "Private Information") and divulge that information to third parties Meta, Google and other digital media platforms without consent. In fact, Edward-Elmhurst concedes that "for purposes of this motion only", that Edward-Elmhurst's action may have violated HIPAA. MTD at 2.

As detailed in the Amended Class Action Complaint ("Amended Complaint"), in addition to collecting a considerable amount of Private Information automatically, the pixels that Edward-Elmhurst installed track people and the actions they take as they interact with its website, https://www.eehealth.org, (the "Website") and MyChart Portal (the "Portal," collectively the "Web Properties").[1] The information that Defendant tracked included how long Plaintiffs and Class Members who visited and used its Web Properties ("Users") spent on a particular web page, which buttons they click, which pages they view and the text or phrases they type into various portions of the Website (such as a general search bar, chat feature or text box). By choosing to install the pixels and disclose Users' Private Information, Edward-Elmhurst intentionally put its profits over the privacy rights of its Users and violated its own promises and Notice of Privacy Practices in the process of doing so. Indeed, Defendant has ***never*** disclosed to its patients that it shared their sensitive and confidential communications and Private Information including their medical conditions, treatments and appointment scheduling information, with third parties.[2]

---

[1] All paragraph citations throughout this Opposition are to Plaintiffs' Amended Class Action Complaint, Dkt No. 31.

[2] In recent months, and in stark contrast to Edward-Elmhurst, several healthcare entities using

Hoping to avoid judicial scrutiny of its practices, Edward-Elmhurst resorts to asking this Court to find that its illegal conduct—that clearly violated the Health Insurance Portability and Accountability Act ("HIPAA") as well as federal and state laws—should be ignored. The prohibition against disclosure of PHI without consent is not new, nor is this lawsuit a "gotcha" attempt to hold a defendant liable for some technical violation of a statute. Rather, the Office for Civil Rights ("OCR") at the Department of Health and Human Services makes it clear that regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of Private Information to tracking technology vendors or any other violations of HIPAA. *See* ¶¶ 34-35.[3]

To be certain, Defendant is not an innocent party here; rather, it made the conscious decision to partner with Facebook (and other third-party platforms), signed up with, *e.g.*, Facebook Business, agreed to its terms which informed Defendant that it should not configure pixels on its Web Properties in a way that would disclose Private Information without consent and then—once installed and configured by Defendant to delineate the precise types of information that it wanted to acquire—availed itself of the marketing and analytics insights and marketing benefits and opportunities provided by the surreptitious tracking of its patients. *See, e.g.*, ¶¶ 77-81 & 285-89.

Defendant's argument that HIPAA does not provide a private right of action should not affect this Court's analysis as Plaintiffs do not assert a claim under HIPAA, nor do they seek to

similar (if not identical) tracking technologies have provided patients with notice that their Private Information was disclosed to third parties. *See* ¶ 28, n. 12.

[3] On March 18, 2024, OCR updated the HHS Bulletin to make it clear (yet again) to regulated entities that they "are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules." *See* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited April 3, 2024).

enforce the HIPAA privacy rule via some other cause of action. *Compare* MTD at 2, *with* ¶ 219. For instance, Plaintiffs assert a representative claim on behalf of a nationwide class of all those similarly situated for violation of the Electronic Communication Privacy Act ("ECPA") because it is clear that the party exception does not apply where the interceptor acts "for the purpose of committing ***any*** criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d) (emphasis added). The crime-tort exception does not require an underlying private right of action, and the Court should not read that requirement into the plain language of the statute. *See Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016) ("As with all questions of statutory interpretation, we start with the text of the statute to ascertain its plain meaning.").

Plaintiffs' ECPA claim should not be dismissed because the Amended Complaint details how Edward-Elmhurst had an independent purpose to violate HIPAA and federal and state laws. *See, e.g.*, ¶¶ 351-60. Judge Kennelly evaluated plaintiffs' allegations in a similar case against a healthcare defendant and concluded that "[a]ll of these allegations, taken together, are sufficient to invoke the HIPAA exception-to-the-party-exception quoted earlier." *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (*"Rush III"*). In recent months, several other courts have sustained the viability of similar claims in pixel tracking cases, noting that the existence of a lawful purpose (*e.g.*, a profit motive) does *not* sanitize an interception that was also made for an illegitimate purpose—to disclose its users protected and personally identifiable PHI to undisclosed third parties. *See, e.g.*, *Kane v. Univ. of Rochester*, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) ("*Group Health*") (quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("*Meta Pixel I"*)).

Plaintiffs also allege a representative claim that Edward-Elmhurst violated the Illinois Eavesdropping Act. *See, e.g.*, ¶¶ 357-71. Contrary to Defendant's arguments, the Act does not only apply to oral communications. MTD at 3. And for electronic communications, the consent of *all* parties is required. *Compare id*., *with Cannon v. City of Anna, Illinois*, 2023 WL 2349344, at *5 (S.D. Ill. Mar. 3, 2023). Because Plaintiffs and Class Members did not consent to Defendant's disclosure of their Private Information to third parties, Plaintiffs' Illinois Eavesdropping Act claim should not be dismissed.

Further, Defendant argues that Plaintiffs' negligence claim should be dismissed because the physician-patient relationship does not establish a recognized duty of care under Illinois law. MTD at 18-19. However, Plaintiffs' negligence claim also relies on two separate duties of care that have been recognized by courts in this district and Illinois which establish a sufficient basis for Plaintiffs to proceed with their claim.

Finally, Edward-Elmhurst's Motion directs the Court to five other cases pending in the Northern District of Illinois against other healthcare entities that used similar tracking technologies in a manner similar to Defendant, *i.e.*, an unlawful one, in order to further downplay its conduct here. *See* MTD at 1 (citations omitted). But Defendant ignores or attempts to minimize recent decisions of courts in the Seventh Circuit and around the country that have sustained similar pixel tracking complaints. *See, e.g.*, *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *4-13 (D. Minn. Mar. 28, 2024) (denying motion to dismiss ECPA, unjust enrichment and other claims); *Kane*, 2024 WL 1178340, at *8-12, 15-18 (similar); *E.H. v. Meta Platforms, Inc.*, 2024 WL 557728, at *2-10 (N.D. Cal. Feb. 12, 2024) (denying motion to dismiss in its entirety); *In Re Meta Healthcare Pixel Litig.*, 2024 WL 333883, at *3-7 (N.D. Cal. Jan. 29, 2024) (denying motion to dismiss constitutional privacy & intrusion upon seclusion as well as other claims); *Rush III*, 2023

WL 8544084, at *4 (granting motion for leave to amend ECPA claim because plaintiffs' additional allegations in were sufficient "to invoke the HIPAA exception-to-the-party-exception"). This Court too, should deny Edward-Elmhurst's motion to dismiss in its entirety.

**FEDERAL RULE 12(b)(6) STANDARD**

The purpose of a Rule 12(b)(6) motion to dismiss is to evaluate the legal sufficiency of a complaint, not decide the merits of the case. *See, e.g.*, *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 893 (7th Cir. 2014). For purposes of a motion to dismiss, the Court accepts "as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017) (quotation omitted). Courts must deny a motion to dismiss pursuant to Rule 12(b)(6) if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Id.*, at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together.")

**ARGUMENT**

**I. PLAINTIFFS PLAUSIBLY ALLEGE DEFENDANT'S VIOLATION OF THE FEDERAL WIRETAP STATUTE.**

To state a claim under the ECPA, a plaintiff must allege that the defendant: "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015) (internal citations omitted). Plaintiffs allege that Edward-Elmhurst violated three distinct provisions of the

ECPA, which proscribes (a) the *interception* of Plaintiffs' electronic communications, (c) the *disclosure* of Plaintiffs' electronic communications and (d) *using* the contents of those electronic communications. *See* ¶¶ 335-64. In response, Edward-Elmhurst attempts to avoid liability under the ECPA by claiming that its conduct falls within the statute's party exception and that the crime-tort exception to the party exception cannot apply. But in making this argument, Edward-Elmhurst ignores the well-pled allegations in the Amended Complaint as well as raises factual issues not appropriately resolved at this stage of the case.

**A. Plaintiffs Plausibly Allege that Defendant Intercepted their Communications.**

In one sentence with an accompanying string cite of cases holding that interception is a necessary element of the ECPA, Defendant states that "in order to violate the statute through an alleged unlawful disclosure, as Stein and Miller claim here, there must have been an unlawful interception of some communication in the first instance." MTD at 5. Defendant appears to contest that it intercepted Plaintiffs' communications. To be certain, Plaintiffs allege over 20 times that Defendant intentionally installed or embedded tracking tools on its Web Properties to intercept its Users' communications and identities not for treatment purposes but to disclose this information to third parties, such as Meta. *See, e.g.*, ¶¶ 10, 15-16, 58, 75-76, 132, 159, 161, 286, 339, 363 & 409. The Meta Pixel accomplishes the interception by contemporaneously redirecting patient communications to Facebook every time a User takes an action on Defendant's Web Properties. *See, e.g.*, ¶¶ 86, 117 & 341. Courts routinely hold that the use of source code to simultaneously redirect communications to a third party is an "interception" under the ECPA. *See, e.g.*, *United States v. Szymuszkiewicz*, 622 F.3d 701, 703–04, 706 (7th Cir. 2010) (affirming that "the duplication and forwarding" of emails to a third party is an "interception" under the ECPA); *Group Health*, 2023 WL 8850243, at *6 (finding plaintiffs alleged an interception because the Pixel

"contemporaneously and intentionally redirected and disclosed the contents of Plaintiffs' electronic communications to third parties") (cleaned up). Accordingly, Plaintiffs' allegations readily satisfy the "interception" element of her ECPA claim.

### B. The Party Exception Does Not Apply Because Plaintiffs Allege that Edward-Elmhurst Committed a Crime or Tort.

Edward-Elmhurst concedes that the "gravamen of this claim is as follows: '***Edward-Elmhurst transmits the content of Plaintiffs' and the Class Members' communications*** to Meta through the ***surreptitious redirection*** of those communications from Plaintiffs' and the Class members' computing devices.'" MTD at 4 (quoting ¶ 345) (emphasis added). These allegations are not concessions of any kind. Rather, the crux of this action is that Plaintiffs (and class members) intended Edward-Elmhurst—*and only Edward-Elmhurst*—to receive the extremely private and sensitive communications concerning their Private Information at issue.

Where the crime-tort exception applies, the exception overrides the one-party consent rule of the federal Wiretap Act. The crime-tort exception is as follows, in relevant part:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication … ***unless such communication is intercepted for the purpose of committing any criminal or tortious act*** in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). Criminal or tortious purposes may include "invading [a plaintiff's] privacy, defrauding her, or committing unfair business practices." *Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467, n.4 (9th Cir. 1997) (cleaned up). For the reasons explained below, the crime-tort exception applies and, at a minimum, is a fact question. *See, e.g., Doe v. Meta Platforms, Inc.*, 2023 WL 5837443, at *3 (N.D. Cal. Sept. 7, 2023) (noting that fact questions existed regarding "what steps [defendant] actually took to prevent receipt of health

information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record"). Thus, the fact that Edward-Elmhurst was a party to the communications does not shield it from liability.

### C. Plaintiffs Allege that Edward-Elmhurst Committed an Independent Criminal or Tortious Act.

Courts interpret the crime-tort exception as requiring only "sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording." *In re Google Inc. Cookie Placement Cons. Priv. Litig.*, 806 F.3d at 145 (emphasis in original, quoting *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)). The crime-tort exception focuses on whether the purpose for the interception—its intended use—was criminal or tortious. *See Desnick v. Am. Broad. Companies, Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995). Notably, "[t]he existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *Meta Pixel I*, 647 F. Supp. 3d at 796. Importantly, third-party tracking tools are not necessary to communicate with patients, provide medical care or even operate a website. Undaunted, Edward-Elmhurst attempts to sidestep Plaintiffs' detailed allegations by arguing that they do not support the Court's application of the crime-tort exception. *See* MTD at 6-10.

First, Plaintiffs allege that Edward-Elmhurst intercepted their electronic communications for the purposes of violating HIPAA by collecting and disclosing their individually identifiable health information ("IIHI") without consent thereby tortiously and criminally invading the privacy of Plaintiffs and the Class Members. *See, e.g.*, ¶¶ 353-55. Information is IIHI if it (i) is "created or received by" a health care provider and (ii) either "identifies the individual" or provides a

reasonable basis to identify the individual. ¶ 204; 42 U.S.C. § 1320d-6(A)-(B). Judge Kennelly previously concluded that allegations that a healthcare defendant knowingly transmits information that constitutes IIHI within the meaning of HIPAA for the purpose of financial gain are sufficient to invoke the HIPAA exception-to-the-party-exception. *See Rush III*, 2023 WL 8544084, at *2-3. Judge Geraci, in *Kane*, similarly denied a motion to dismiss with respect to an ECPA claim because it found that defendant violated HIPPA by receiving and then disclosing "information relating to the provision of health care that could reasonably identify that user" and, as a result, the crime-tort exception applied. *See* 2024 WL 1178340, at *7.

As in *Rush III*, Plaintiffs here have alleged (i) when they began using Edward-Elmhurst's Web Properties; (ii) the specific health conditions,[4] medical history and personal information that they shared with Defendant (iii) and the actions they took on Defendant's Web Properties including communicating with healthcare providers, researching their particular medical concerns and treatments, scheduling and attending appointments and performing other tasks related to their medical inquiries and treatment. *See* ¶¶ 286-414. Defendant does not dispute that either element of IIHI is met here. Instead, Defendant admits it "may have violated HIPAA." MTD at 2. Nevertheless, Plaintiffs sufficiently allege that their Private Information was received by Edward-Elmhurst and identifies or provides a reasonable basis to identify them. *See, e.g.*, ¶¶ 5, 53, 167-68 & 280. Thus, Defendant's alleged independent violations of HIPAA are sufficient to invoke the crime tort exception to ECPA liability.

Second, Plaintiffs allege that Defendant's acquisition of patient communications that were disclosed to Meta and other third parties without consent was done for the purpose of committing

[4] Plaintiffs filed an unredacted copy of the Amended Complaint under seal given Plaintiffs' sensitive medical conditions discussed therein. *See* Dkt. 30.

criminal and tortious acts in violation of the laws of the United States and Illinois. *See* ¶ 351(a)-(g). As explained below, Defendant violated the Illinois Eavesdropping Act. *See, infra,* Section II; *see also* ¶¶ 357-71. Plaintiffs' alternative allegations concerning Edward-Elmhurst's scheme or artifice to defraud are further sufficient to invoke the crime-tort exception. Plaintiffs describe the process Defendant used including, but not limited to, (i) its false and misleading statements and omissions in its Privacy Policy; (ii) the placement of the fbp cookie on patient devices distinguished as a first-party cookie on Defendant's Website (instead of a third-party cookie run by Meta) and (iii) how Defendant willfully invaded and took Plaintiffs' property by sharing Plaintiffs' data without written authorization with knowledge that Defendant did not have the right to do so. *See* ¶¶ 357-58. Plaintiffs also allege that Edward-Elmhurst committed the independent tort of negligence. *See, infra,* Section III; *see also* ¶¶ 432-48.

The cases Edward-Elmhurst relies on to support its argument that the crime-tort exception does not apply are readily distinguishable. MTD at 5-7 (citing *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) & *Desnick v. American Broadcasting Cos, Inc.*, 44 F.3d 1345 (7th Cir. 1995)). Concerning *In re DoubleClick*, the case did not involve the transmission of PHI, but instead challenged an internet advertiser who, after an FTC investigation, was found to have "never used or disclosed consumers' PII for purposes other than those disclosed in its privacy policy," and created profiles for users that contained "only non-PHI." 154 F. Supp. 2d at 500, 506. In contrast, Defendant is a healthcare provider who encourages patients like Plaintiffs to use its Web Properties for the provision of healthcare services and then uses that very platform to surreptitiously collect PHI and disclose that sensitive information to Meta and other third parties. *See, e.g.*, ¶¶ 286-314.

Further supporting Plaintiffs' position is the fact that the FTC and OCR have proscribed Edward-Elmhurst's conduct. *See, e.g.*, ¶¶ 34-35 & 189-98. And Plaintiffs pled that Defendant collects and discloses PHI it knows is protected—disclosures deemed "impermissible" by the FTC and OCR—whereas those in *In re DoubleClick* did not include PHI and were disclosed in the privacy policy. *See* 154 F. Supp. 2d at 506-07, 514-15. *In re DoubleClick* also helpfully lists some of the torts that can support the crime-tort exception including intercepting a communication "for the purpose of violating Cal. Penal Code § 632, for the purpose of invading [plaintiff's] privacy, … or for the purpose of committing unfair business practices." 154 F.Supp.2d at 516 (citations omitted). Plaintiffs allege that Edward-Elmhurst intercepted the communications for the purpose of committing exactly these and similar types of torts. *See, e.g.*, ¶¶ 372-92 & 432-48.

Defendant's reliance on *Desnick* is similarly misplaced as in that case there was no dispute that defendant's intended purpose in recording plaintiffs was "to see whether the Center's physicians would recommend cataract surgery on the testers." 44 F.3d 1345, 1353 (7th Cir. 1995). That is, plaintiffs' ECPA claim did not rely on a tortious purpose at the time of the recording which is required for the exception to apply. *Id.* Plaintiffs tried to work backwards by claiming that because defendants made the decision to use the recording for an alleged defamation after the recording was made, the crime-tort exception applied. The court rejected the argument because the pleadings failed to allege a tortious intent *at the time* of the recording. *Id.* Our facts are readily distinguishable—Plaintiffs more than plausibly allege that Edward-Elmhurst intentionally installed the Meta Pixel and other tracking technologies for the purpose of intercepting and disclosing its Users' Private Information to third parties. *See, e.g.*, ¶¶ 63-64, 77, 87 & 342-43. Thus, once the tracking tools were installed and began intercepting patient communications,

Defendant had already established the requisite criminal purpose of sharing the intercepted Private Information with Meta.

In a last-ditch effort to evade the crime-tort exception, relying on *In re DoubleClick* and *Desnick*, Edward-Elmhurst seeks shelter under the notion that "taking action for financial purposes is not sufficient to invoke the exception" and its commercial speech should be protected by the First Amendment. *See* MTD at 7-8. But Defendant's profit motive and commercial speech have no bearing on the analysis as the "existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *Meta Pixel I*, 647 F. Supp. 3d at 797 (quotation omitted); *see also Goodman v. Illinois Dep't of Fin. & Pro. Regul.*, 430 F.3d 432, 438 (7th Cir. 2005) (explaining that "commercial speech is not automatically protected speech"). Moreover, while the Seventh Circuit has not weighed in on whether a financial motive to commit a crime or tort is sufficient, Judge Kennelly has. Defendant, however, argues:

> It may be that Stein and Miller can ultimately show that Edward-Elmhurst's actions crossed the privacy threshold into a potential legal violation, including even of HIPAA itself. . . But that would not in turn mean that Stein and Miller have also adequately stated their federal Wiretap Act claim grounded in this alleged legal violation, notwithstanding Judge Kennelly's recent decision to the contrary, with which Edward-Elmhurst respectfully disagrees.

MTD at 8 (citations omitted). Ultimately, Defendant's argument is not supported by *In re DoubleClick* or *Desnick*. And Defendant ignores the substance of Plaintiffs' allegations, instead asking this Court to ignore Judge Kennelly's well-reasoned decision—an approach this Court should not take given the underlying factual similarity between the two cases.

Finally, whether Edward-Elmhurst had criminal or tortious intent is a factual question for discovery to be decided by the Court on the basis of a full evidentiary record. *See, e.g., Rush III*, 2023 WL 8544084, at *3 (observing that plaintiff "lacks the direct access to what occurs in the

background on Rush's web properties"); *Group Health*, 2023 WL 8850243, at *7–8 ("[D]etermination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking."). Precisely because Plaintiffs "may be able to show" that the crime-tort exception applies at a later, fact-intensive stage, courts have held that it is inappropriate to dismiss a suit at the pleading stage based on the single-party consent defense under § 2511(2)(d). *See Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) (explaining that even where defendant "obviously consented to the recording, [] that does not justify dismissing the suit").

## II. PLAINTIFFS STATE A VIABLE CLAIM UNDER THE ILLINOIS EAVESDROPPING ACT.

The Illinois Eavesdropping Act creates a civil cause of action against an eavesdropper "when he or she knowingly and intentionally . . . [u]ses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party ***unless he or she does so with the consent of all other parties*** to the private conversation." 720 ILCS 5/14-2(a)(2) (emphasis added); *see also* 720 ILCS 5/14-2(a)(5) ("A person commits eavesdropping when he or she [u]ses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with ***the consent of all of the parties***.") (emphasis added).[5]

Under the Act, an "eavesdropping device" is "any device capable of being used to . . . intercept . . . electronic communications[.]" 720 ILCS 5/14-1(a). The Act defines "private

[5] The Illinois Eavesdropping Act also creates a civil cause of action against an eavesdropper or "his principal" for the interception, recording, or transcription, "in a surreptitious manner, [of] any private electronic communication" by a non-party without "the consent of all parties to the private electronic communication." 720 Ill. Stat. §§ 5/14-2(a)(3).

conversation" as "any oral communication between 2 or more persons, ***whether in person or transmitted between the parties by wire or other means***, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(d) (emphasis added). In order to evade judicial review of its use of tracking technologies on its Web Properties, Defendant puts forward two—both equally unavailing—arguments in an attempt to escape liability.

First, Defendant argues that "private conversation" in 720 ILCS 5/14-2(a)(2) is limited to oral communications and thus the provision cannot apply to Plaintiffs' allegations. MTD at 9. Defendant relies on *Angelo v. Moriarty*, where the court analyzed the pre-1994 version of the Illinois Eavesdropping Act. *See* 2016 WL 640525, at *4 (N.D. Ill. Feb. 18, 2016). However, the current version of the Act has been in effect since 2014. At that time, "private conversation" was amended to include communications "transmitted between the parties ***by wire or other means***." 720 ILCS 5/14-1(d) (emphasis added). The current definition is broader than earlier versions and the meaning of "private conversation" is clearly not restricted to oral conversations only. *See United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 622 (7th Cir. 2015) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says") (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)).

Second, Defendant argues that only one-party consent is required under 720 ILCS 5/14-2(a)(5). MTD at 9-10. This is not so as the Illinois Eavesdropping Act was amended in 1994 to make clear "that the consent of all parties to recording a conversation is required, regardless of whether the parties intended their conversation to be private." *Henyard v. MV Transportation*, 2019 WL 1399953, at *7 n.4 (N.D. Ill. Mar. 28, 2019) (cleaned up). "Under current Illinois law, a party to a private conversation must have consent of all other parties before recording the

conversation. . . [if] one or more parties is reasonably justified in expecting the conversation to be private." *Cannon*, 2023 WL 2349344, at *5 (internal citation & quotation omitted); *but see Zak v. Bose Corp.*, 2020 WL 2762552, at *2 (N.D. Ill. May 27, 2020) (conflating the requirements for the ECPA and the Illinois Eavesdropping Act). Importantly, "medical information may be a form of protected confidential information because of its intimate and personal nature." *Denius v. Dunlap*, 209 F.3d 944, 957 (7th Cir. 2000).

Here, Plaintiffs did not consent to their Private Information being disclosed to third parties. *See, e.g.*, ¶¶ 26-38 & 367. And moreover, Plaintiffs had a reasonable expectation that their private communications with their healthcare provider as well as their research (and other interactions with Edward-Elmhurst's Web Properties) concerning their conditions and treatment would remain confidential. *See, e.g.*, ¶¶ 257-62; *Henyard*, 2019 WL 1399953, at *8 (denying motion to dismiss where plaintiff had a reasonable expectation of privacy). Indeed, Defendant's Privacy Policy promised that it does "match personally identifiable information with non-personally identifiable information." ¶ 1. Defendant's Privacy Policy is likewise clear that it did not permit Defendant to use and to disclose Plaintiffs' and Class Members' Private Information for marketing purposes without prior express consent—consent that Defendant did not have. *See* ¶ 186; *see also Kurowski v. Rush Sys. for Health*, 2023 WL 4707184, at *13 (N.D. Ill. July 24, 2023) (permitting claim under Illinois Eavesdropping Act to proceed past motion to dismiss).

## III. PLAINTIFFS STATE A VIABLE NEGLIGENCE CLAIM UNDER ILLINOIS LAW.

To state a claim for negligence, Plaintiffs must allege facts showing that "(1) the defendant owed a duty of care to the plaintiff, (2) that the defendant breached that duty, and (3) that the breach was the proximate cause of plaintiff's injuries." *Cowper v. Nyberg*, 2015 IL 117811, ¶

13. Defendant challenges only the first element of Plaintiffs' negligence claim, *i.e.* that it owed Plaintiffs a duty of care. MTD at 18. Ignoring Plaintiffs' well-plead allegations, Defendant argues that Plaintiffs' negligence claim fails because the physician-patient relationship does not establish a common law duty of care under Illinois law. *Id*. However, the negligence claim pled in Plaintiffs' Amended Complaint identifies two additional grounds, aside from HIPAA, giving rise to a duty on Defendant to keep Plaintiffs' Private Information confidential, which plainly governs Defendant's collection of sensitive, private health information from the users of its Web Properties.

First, Plaintiffs allege that Defendant owed them a common law duty to prevent the "disclosure of [their] Private Information to unauthorized parties," and Defendant breached that duty by disclosing this information to Meta and Google without their knowledge or consent. ¶ 433. The Illinois Appellate Court and courts in this district recognize a common law duty to maintain reasonable security measures to prevent the unauthorized disclosure of private information, which includes medical information. *See, e.g., Wittmeyer v. Heartland Alliance for Human Needs & Rights*, 2024 WL 182211, *2 (N.D.Ill. Jan. 17, 2024) (recognizing that a duty to protect personal information exists under Illinois common law); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022) (); *Flores v. AON Corp.*, 2023 IL App (1st) No. 230140 ¶ 10 (similar).

Plaintiffs also allege that Defendant assumed a duty to protect their Private Information by making public representations that it would not disclose its patients' personally identifiable information to third parties without their consent. *See*, e.g., ¶¶ 133-135 & 437. "The existence of a common law duty is a question of law and is shaped by public policy considerations." *Grant v. South Roxana Dad's Club*, 381 Ill.App.3d 665, 669 (2008). "The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the

law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Krywin v. Chicago Transit Authority*, 238 Ill.2d 215, 226 (2010). When determining whether there is a duty of care under the common law in Illinois, courts look at "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Flores*, 2023 IL App (1st) 230140 at ¶ 10-11 (citing *Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 2018 IL 120951, ¶ 46.).

The relationship between Plaintiffs and Defendant, coupled with Defendant's express promises to safeguard Plaintiffs' Private Information from unauthorized disclosures, inescapably establishes a duty of care under Illinois law. It is foreseeable that the failure to prevent the unauthorized disclosure of Plaintiff's Private Information can lead to several types of serious injury. For instance, the HHS Bulletin cited in Plaintiff's FAC identifies the many injuries that can flow from the unauthorized disclosure of protected health information:

> An impermissible disclosure of an individual's PHI not only violates the Privacy Rule but also may result in a wide range of additional harms to the individual or others. For example, an impermissible disclosure of PHI may result in identity theft, financial loss, discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI. Such disclosures can reveal incredibly sensitive information about an individual, including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment.

¶ 191.

Further, the likelihood of these injuries arising from an unauthorized disclosure is palpable, as demonstrated by the extensive, detailed and explicit HIPAA regulations that are specifically designed to prevent such injuries. Next, the burden for Defendant to maintain the confidentiality

of its patients' Private Information is not an issue, given that Defendant: (1) is already required to comply with state and federal regulations that prohibit unauthorized disclosures and (2) made affirmative, public-facing representations that it would protect its patients Private Information. *See* ¶ 1. Finally, Defendant would suffer no significant, if any, burden in preventing the unauthorized disclosure of Private Information, given the responsibility it already has to comply with the extensive regulations prohibiting this conduct. Accordingly, all four factors lead squarely to the conclusion that Defendant owes its patients, including Plaintiffs, a common law duty to prevent the unauthorized disclosure of their Private Information.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Edward-Elmhurst's Motion to Dismiss, grant leave to amend to address any pleading deficiencies noted by this Honorable Court and award all such other relief as equity and justice require.[6]

Date: April 9, 2024

Respectfully submitted,

By: /s/ *James B. Zouras*

**ALMEIDA LAW GROUP LLC**
David S. Almeida (ARDC 6285557)
Britany A. Kabakov (ARDC 6336126)
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024 (phone)
david@almeidalawgroup.com
britany@almeidalawgroup.com

**STEPHAN ZOURAS, LLC**
James B. Zouras
Ryan F. Stephan
Teresa M. Becvar

[6] Courts "should freely give leave" to amend a pleading "when justice so requires." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020) (quoting Fed. R. Civ. P. 15(a)(2)).

Michael J. Casas
222 W. Adams St, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com
mcasas@stephanzouras.com

*Attorneys for Plaintiffs & the Putative Class*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2024, he electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ James B. Zouras*