**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ARNOLD STEIN and DIANE MILLER, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br>v.<br><br>EDWARD-ELMHURST HEALTH,<br><br>Defendant. | Case No. 1:23-cv-14515<br><br>The Honorable Steven C. Seeger, Judge |

**DEFENDANT EDWARD-ELMHURST HEALTH'S REPLY BRIEF IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

**INTRODUCTION..........................................................................................................................1**

A. *As in Desnick, the Tortious or Criminal Conduct Exception Does Not Apply as a Matter of Law from Stein and Miller's Allegations. ...............................................1*

B. *The Plain Text of the Illinois Eavesdropping Act Bars Stein and Miller's "Private Conversation" Claim. ..........................................................................................7*

C. *Illinois Law Does Not Recognize an Independent Tort Claim for Breach of Alleged Physician-Patient Confidentiality...............................................................8*

D. *Stein and Miller Have Abandoned their Illinois Consumer Fraud Act, Illinois Deceptive Trade Practices Act, Invasion of Privacy, Implied Contract, and Breach of Confidence Claims. ..................................................................................10*

**CONCLUSION .........................................................................................................................10**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amburgy v. Express Scripts, Inc.*,
671 F. Supp. 2d 1046 (E.D. Mo. 2009)....................9

*Bates v. State Bar of Az.*,
433 U.S. 350 (1977)....................5

*Bigelow v. Virginia*,
421 U.S. 809 (1975)....................5

*Boogard v. Nat'l Hockey League*,
255 F. Supp. 3d 753 (N.D. Ill. 2017)....................9

*Cannon v. City of Anna, Illinois*,
2023 WL 2349344 (S.D. Ill Mar. 3, 2023)....................8

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................3, 7

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018)....................7

*Cruz v. Griebel*,
2021 WL 5321044 (N.D. Ill. Nov. 16, 2021)....................9

*Desnick v. American Broadcasting Companies, Inc.*,
44 F.3d 1345 (7th Cir. 1995).................... *passim*

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................3, 6

*Goodman v. Illinois Department of Financial and Professional Regulation*,
430 F.3d 432 (7th Cir. 2005)....................5

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)....................4

*In re Group Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023)....................6

*Henyard v. MV Transportation*,
2019 WL 1399953 (N.D. Ill. Mar. 28, 2019)....................8

*Kane v. University of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)....................6

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)....................4, 6

*Kurowski v. Rush System for Health*,
--- F. Supp. 3d ----, 2023 WL 4707184 (N.D. Ill. July 24, 2023)....................1

*Kurowski v. Rush System for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)....................1, 6

*Kurowski v. Rush System for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)....................1

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 778 (N.D. Cal. 2022)....................5

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. May 21, 2021)....................4

*Sussman v. Am. Broadcasting Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999)....................5

*Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*,
425 U.S. 748 (1976)....................5

**Rules & Statutes**

ILCS 720 § 5/14-1....................8

ILCS 720 § 5/14-2....................8

42 U.S.C. § 1320....................6

FED. R. CIV. PRO. R. 12....................1, 2, 9, 10

## INTRODUCTION

From eight claims we are now down to three. The parties' briefing shows that the federal Wiretap Act claim is the one claim to rule them all. But the amended complaint fails to state a claim for relief under Rule 12(b)(6) on every count.

Defendant Edward-Elmhurst Health respectfully submits the following reply brief in support of its motion to dismiss:

### A. As in *Desnick*, the Tortious or Criminal Conduct Exception Does Not Apply as a Matter of Law from Stein and Miller's Allegations.

Stein and Miller first claim "Defendant's argument that HIPAA does not provide a private right of action should not affect this Court's analysis as Plaintiffs do not assert a claim under HIPAA, nor do they seek to enforce the HIPAA privacy rule via some other cause of action." (Dkt. # 41, Opp. Br. 2-3.)

In the very next paragraph of their opposition, however, Stein and Miller then argue that their "ECPA claim should not be dismissed because the Amended Complaint details how Edward-Elmhurst had an independent purpose to violate HIPAA and federal and state law." (*Id.* at 3.)

Through this argument Stein and Miller hope that this Court will fall into the same trap to which Judge Kennelly ultimately succumbed in Rush: determining application of the tortious or criminal conduct exception based on a claimed legal violation. *See Kurowski v. Rush System for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (recognizing a "HIPAA-exception-to-the-party-exception"); *compare Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931, 938-39 (N.D. Ill. 2023); *Kurowski v. Rush System for Health*, --- F. Supp. 3d ----, 2023 WL 4707184, at *3-4 (N.D. Ill. July 24, 2023) (initially holding the exception did not apply because plaintiffs had not plausibly alleged Rush violated HIPAA).

The Court should reject this invitation, with the Seventh Circuit's decision in *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1353-54 (7th Cir. 1995), as the guide. Stein and Miller claim that *Desnick* is of no relevance here, because "plaintiffs' ECPA claim did not rely on a tortious purpose at the time of the recording which is required for the exception to apply." (Dkt. # 41, Opp. Br. 11.)

As is clear from the opinion, however, there were two sets of claims at issue. Specifically, the facts of *Desnick* were as follows: ABC *PrimetimeLive* was conducting a story about large cataract practices. *Id.* at 1347. The show's producer Entine told the plaintiff that the segment, when it ultimately aired, "would not involve 'ambush' interviews or 'undercover' surveillance, and that it would be 'fair and balanced.'" *Id.* at 1348. "Unbeknownst to Desnick, Entine had dispatched persons equipped with concealed cameras to offices of the Desnick Eye Center in Wisconsin and Indiana." *Id.* "Posing as patients, these persons—seven in all—requested eye examinations." *Id.* "Plaintiffs Glazer and Simon are among the employees of the Desnick Eye center who were secretly videotaped examining these 'test patients.'" *Id.*

Ultimately, the segment aired, in the main claiming that Desnick was taking advantage of the elderly to fraudulently overbill Medicare for unnecessary cataract surgeries. *Id.* at 1348-49. Desnick sued ABC: "The plaintiffs' claims fall into two distinct classes." *Id.* at 1349. "The first arises from the broadcast itself, *the second from the means by which ABC and Entine obtained the information that they used in the broadcast*." *Id.* (emphasis added). This second group of claims, as relevant here, included a claim under the federal Wiretap Act. *Id.* at 1353.

Applying the exception, the Seventh Circuit affirmed the dismissal of the claim as a matter of law under Rule 12(b)(6). *Id.* at 1353-54. The court explained this result as follows: "The defendants did not order the camera-armed testers into the Desnick Eye Center to commit a

crime or a tort." *Id.* at 1353. "Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely." *Id.* "*But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming plaintiffs by charging tampering with the glare machine*." *Id.* (emphasis added). "The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers." *Id.*

Thus, *Desnick* did focus the exception analysis on the defendant's alleged purpose at the time of the recording. And, because it was clear that this purpose was not improper ("by the plaintiffs' own account," to see "whether the Center's physicians would recommend cataract surgery on the testers"), the exception did not apply as a matter of law, even assuming the subsequent broadcast of the recordings ultimately proved to be defamatory.

Under *Desnick*, then, application of the exception is straightforward and focuses first on one thing: What was the defendant's alleged purpose in making the recording? As Judge Buchwald likewise held in *In re DoubleClick*: "Under section 2511, 'the focus is not upon whether the interception itself violated another law; it is upon whether the purpose for interception—*its intended use*—was criminal or tortious.'" *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) (quoting *Sussman v. ABC*, 186 F.3d 1200, 1202 (9th Cir. 1999)). "Where the purpose of a taping is not illegal or tortious, ***but the means are***, the victims must seek redress elsewhere." *Id.* (emphasis added); *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010) (holding "it is 'apparent from the context in which [Title XVIII] was enacted that the sort of conduct contemplated was an interception against the non-consenting party in some harmful way *and in a manner in which the offending party had no right to proceed*'") (emphasis added, quoting *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971)).

Thus, Stein and Miller's analysis of the exception in their opposition brief—that the exception should apply because Edward-Elmhurst allegedly violated HIPAA or any other law—misapplies the tortious or criminal conduct exception. (*See* Dkt. # 41, Opp. Br. 3, 8-9 (HIPAA; "Plaintiffs allege that Edward-Elmhurst intercepted their electronic communications for the purposes of violating HIPAA"); *id.* at 10 ("As explained below, Defendant violated the Illinois Eavesdropping Act."); *id.* (Edward-Elmhurst's alleged "scheme or artifice to defraud"); *id.* ("Plaintiffs also allege that Edward-Elmhurst committed the independent tort of negligence.").)

Under all circumstances, the analysis for the exception begins with Stein and Miller's factual allegations regarding Edward-Elmhurst's alleged purpose in "intercepting" their communications. And here, on this essential point, Stein and Miller allege as follows: "Defendant installed the Pixel on its Web Properties in order to record and/or to transmit all or parts of Plaintiffs' and the putative Class Members' private conversations to third parties for marketing and analytics purposes." (Am. Compl. ¶ 363; *see also id.*, ¶ 29 (alleging that "Defendant's overall intent and purpose in acquiring Users' personal health data was to increase its ability to market and retarget its users, thereby increasing its profits").)

As numerous courts have held, these allegations preclude application of the tortious or criminal conduct exception as a matter of law. *See In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 n.8 (N.D. May 21, 2021); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (each holding that an alleged financial motive was not enough as a matter of law for the tortious or criminal conduct exception to apply).

Chief Judge Seeborg recently re-affirmed this holding in the final *Katz-Lacabe v. Oracle America, Inc.* decision, *see* 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024). Here again the *Katz-*

*Lacabe* plaintiffs argued numerous different reasons for why the exception should apply. *Id.* at *2. The court rejected them all, and dismissed the claim without leave to amend, based on the same basic reasoning: "Plaintiffs fail to plausibly allege Oracle's underlying motivation in collecting and selling data about internet users was anything other than to generate revenue." *Id.* at *3 (citing *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014)).

Citing to *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 778, 796 (N.D. Cal. 2022), Stein and Miller argue that "the existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." (Dkt. # 41, Opp. Br. 8.) *See also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (same). Edward-Elmhurst does not dispute this general proposition. Here, however, Stein and Miller have not plausibly alleged any other potential purpose for why Edward-Elmhurst made the alleged interceptions at issue in their amended complaint. Their well-pled factual allegations show that the sole purpose for using the Meta Pixel is to help Edward-Elmhurst's digital marketing efforts, and particularly on Facebook, "the world's largest social media company," which "generated $117 billion in revenue in 2021, roughly 97% of which was derived from selling advertising space." (Am. Compl. ¶ 68.) As Stein and Miller themselves put it: "The *sole purpose* of the use of the Meta Pixel on Defendant's Web Properties was marketing and profits." (*Id.*, ¶ 278, pg. 65 (emphasis added).)

Citing to *Goodman v. Illinois Department of Financial and Professional Regulation*, 430 F.3d 432, 438 (7th Cir. 2005), Stein and Miller argue "commercial speech is not automatically protected speech." (Dkt. # 41, Opp. Br. 8.) Edward-Elmhurst again does not dispute this general proposition. On the other hand, there can be no dispute that in a trilogy of cases the United States Supreme Court recognized commercial speech as speech protected by the First Amendment,

precisely because of the value of the information this speech can provide to the public. *See Bigelow v. Virginia*, 421 U.S. 809, 825 (1975); *Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748, 765 (1976) ("the free flow of commercial information is indispensable"); *Bates v. State Bar of Az.*, 433 U.S. 350, 376-77 (1977); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (holding "the creation and dissemination of information are speech within the meaning of the First Amendment").

It may be that Stein and Miller can ultimately show that Edward-Elmhurst's alleged marketing practices fell outside the bounds of First Amendment commercial speech protection. As in *Desnick*, however, this would not also mean that Stein and Miller had adequately alleged their federal Wiretap Act claim. *Desnick*, 44 F.3d at 1353; *see also Katz-Lacabe*, 2024 WL 1471299, at *5 ("The fact data collection or sales might at some later point be deemed tortious does not justify application of the crime-tort exception.").

Stein and Miller cite *Kane v. University of Rochester*, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024). (Dkt. # 41, Opp. Br. 3-4.) The court in *Rochester* made the same mistake as in *Rush*, by focusing the exception analysis on whether the defendant's alleged misconduct violated the law, rather than on the defendant's alleged purpose in making the claimed interception: "The Court's task here is to determine whether it is plausible that by disclosing this information, Defendant has knowingly disclosed IIHI to Facebook. The Court concludes that it is." *Kane*, 2024 WL 1178340, at *5.

From this flawed starting point the court then backed its way into the exception applying, based on its further finding that "Plaintiffs have plausibly alleged that Defendant's purpose was to commit an act that is punishable as a crime under 42 U.S.C. § 1320d-6: knowingly disclosing IIHI without authorization for marketing purposes." *Id.*; *see also In re Group Health Plan Litig.*,

2023 WL 8850243, at *8 (D. Minn. Dec. 21, 2023) (holding that the exception applied merely because "Plaintiffs specifically list the various laws they allege HealthPartners purposefully violated and then continue for multiple paragraphs explaining how those laws were violated").

Finally, Stein and Miller argue that application of the exception presents a factual question, inappropriate for resolution on a motion to dismiss. (Dkt. # 41, Opp. Br. 12-13.) This argument is inconsistent with *Desnick*, which affirmed the grant of a motion to dismiss applying the exception based on plaintiffs' factual allegations in the complaint alone. *See Desnick*, 44 F.3d at 1353; *see also, e.g., Caro*, 618 F.3d at 98 (deciding the exception as a matter of law; "we need not remand if the re-pleading effort would be futile"); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) (granting motion to dismiss in alleged internet tracking case; "the exception is 'confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party") (quoting *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013)).

**B. The Plain Text of the Illinois Eavesdropping Act Bars Stein and Miller's "Private Conversation" Claim.**

For their Illinois Eavesdropping Act claim, Stein and Miller first argue that "private conversation" under the statute is not limited to oral communications. Specifically, Stein and Miller argue that the Illinois legislature amended the definition of "private conversation" in 2014 "to include communications 'transmitted between the parties ***by wire or other means***.'" (Dkt. # 41, Opp. Br. 19 (quoting 720 ILCS 5/14-1(d)) (emphasis in original).)

Edward-Elmhurst agrees that the language Stein and Miller identify was added to the definition of "private conversation" in 2014. But the opening and operative language of the provision remained unchanged, and still limits the provision to "oral communications" alone,

however they might be transmitted. The current definition of "private conversation," in its entirety, provides as follows:

> (d) Private conversation. For purposes of this Article, 'private conversation' means ***any oral communication*** between two persons, whether in person or transmitted by the parties by wire or other means, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation. A reasonable expectation shall include any expectation recognized by law, including, but not limited to, an expectation derived from a privilege, immunity, or right established by common law, Supreme Court rule, or the Illinois or United States Constitution.

ILCS 720 § 5/14-1(d) (emphasis added).

Stein and Miller argue that under all circumstances, even for electronic communications, the statute requires the consent of all parties to the conversation for a recording. (*See* Dkt. # 41, Opp. Br. 14.) Here again, however, this is only true for oral communications, as in Stein and Miller's cited cases. *See Henyard v. MV Transportation*, 2019 WL 1399953, at *2 (N.D. Ill. Mar. 28, 2019) (recording of bus driver's phone calls and conversations with passengers made by bus service's dash cam); *Cannon v. City of Anna, Illinois*, 2023 WL 2349344, at *1-2 (S.D. Ill Mar. 3, 2023) (recording of student's conversation with principal made by student's cellphone).

It is not true, however, for private electronic communications, were the statute provides only that "[a] person commits eavesdropping when he or she knowingly and intentionally: . . . (3) Intercepts, records, or transcribes, in a surreptitious manner, any private electronic communication *to which he or she is not a party* unless he or she does so with the consent of all parties to the private electronic communication." 720 Ill. Stat. § 5/14-2(a)(3) (emphasis added).

### C. Illinois Law Does Not Recognize an Independent Tort Claim for Breach of Alleged Physician-Patient Confidentiality.

For their negligence claim, Stein and Miller appear to concede that both the physician-patient relationship and HIPAA cannot establish a common law duty of care under Illinois law. (*See* Dkt. # 41, Opp. Br. 16.) They instead argue their amended complaint identifies two other

grounds "giving rise to a duty on Defendant to keep Plaintiffs' Private Information confidential," the first of which is "a common law duty to maintain reasonable security measures to prevent the unauthorized disclosure of private information, which includes medical information." (*Id.*)

Edward-Elmhurst does not dispute that Illinois courts have recognized a "duty to protect" information from a data breach, as in the cases cited by Stein and Miller. *See Wittmeyer v. Heratland Alliance for Human Needs & Rights*, 2024 WL 182211, *1 (N.D. Ill. Jan. 17, 2024) ("unauthorized users obtained access to PII and PHI of Heartlands' clients, employees, and independent contractors."); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F.Supp.3d 573, 581 (N.D. Ill. 2022) ("an unknown party accessed certain segments of AJG's network, including segments at GBS, during a ransom ware event (the Data Breach)"); *Flores v. AON Corp.*, 2023 Ill App (1st) 230140, ¶ 3 ("an unauthorized third party had been repeatedly accessing some of defendant's systems since late December 2020."). This case by contrast does not involve a data breach, but an alleged affirmative data disclosure by a physician, a claim that Illinois common law has not recognized: "Defendant knowingly and intentionally disclosed Plaintiffs' PHI to Facebook." (Dkt. #31, Am. Compl. ¶ 178; *see also id.*, ¶¶ 2, 59, 87, 118, 133, 135, 211, 249.)

Stein and Miller next argue "[t]he relationship between Plaintiffs and Defendant, coupled with Defendant's express promises to safeguard Plaintiffs' Private Information from unauthorized disclosures, inescapably established a duty of care under Illinois law." (Dkt. # 41, Opp. Br. 17.) Yet, the cases they cite on this point are distinguishable and do not involve a physician-patient relationship. *Grant v. South Roxana Dad's Club*, 886 N.E.2d 543, 551 (Ill. App. 5th Dist. 2008) (property owner-invitee relationship); *Krywin v. Chicago Transit Auth.*, 938 N.E.2d 440, 446 (Ill. 2010) (common carrier-passenger relationship).

### D. Stein and Miller Have Abandoned their Illinois Consumer Fraud Act, Illinois Deceptive Trade Practices Act, Invasion of Privacy, Implied Contract, and Breach of Confidence Claims.

Stein and Miller's opposition brief makes no attempt to defend five of their eight stated claims under Rule 12(b)(6): for alleged violation of the Consumer Fraud Act (Dkt. # 39, Mem. in Supp. 10-13); the Deceptive Trade Practices Act (*id.*, at 14-15); invasion of privacy (*id.*, at 15-16); breach of implied contract (*id.*, at 17-18); and breach of confidence (*id.*, at 18-19).

These claims have now been forfeited and should be dismissed with prejudice. *Cruz v. Griebel*, 2021 WL 5321044, at *1 (N.D. Ill. Nov. 16, 2021) ("because Plaintiff's opposition brief fails to address the plausible legal grounded set forth by Defendants for dismissing the federal claims, Plaintiff has forfeited those claims") (citing *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012)); *Boogard v. Nat'l Hockey League*, 255 F. Supp. 3d 753, 766 (N.D. Ill. 2017) (same; "a plaintiff who forfeits his claims does not get a chance to replead").

## CONCLUSION

The Court should grant this motion and dismiss Stein and Miller's amended complaint in its entirety under Rule 12(b)(6) for failure to state a claim.

Dated: April 16, 2024

Respectfully submitted,

**EDWARD-ELMHURST HEALTH**

By: /s/ *David Carney*

Bonnie Keane DelGobbo
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, IL 60606
(312) 416-6200

David Carney
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200
dcarney@bakerlaw.com

*Counsel for defendant Edward-Elmhurst Health*