**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | | |
|---|---|---|
| ARNOLD STEIN and DIANE MILLER, *individually and on behalf of all others similarly situated,* | ) | |
| Plaintiffs, | ) | Case No. 23-cv-14515 |
| v. | ) | |
| | ) | The Honorable Steven C. Seeger, |
| EDWARD-ELMHURST HEALTH, | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT EDWARD-ELMHURST HEALTH'S MOTION FOR RECONSIDERATION OR FOR INTERLOCUTORY APPEAL**

## TABLE OF CONTENTS

**Page**

**INTRODUCTION ..... 1**

**ARGUMENT ..... 4**

I. STANDARDS OF REVIEW ..... 4

II. THE COURT MISAPPLIED THE LAW IN HOLDING THAT THE TORTIOUS OR CRIMINAL EXCEPTION DOES NOT REQUIRE A TORTIOUS OR CRIMINAL PURPOSE. ..... 5

III. THE COURT SHOULD RECONSIDER THE ENTIRETY OF ITS WIRETAP ACT DECISION. ..... 8

IV. IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THE TORTIOUS OR CRIMINAL CONDUCT QUESTION TO THE SEVENTH CIRCUIT FOR IMMEDIATE REVIEW. ..... 10

**CONCLUSION ..... 14**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Aspen Dental Mgt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ....12

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....12

*B.K. v. Eisenhower Med. Ctr.*,
2024 WL 2037404 (C.D. Cal. Apr. 11, 2024) ....12

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....12

*Bates v. State Bar of Az.*,
433 U.S. 350 (1977)....2

*In re BetterHelp, Inc. Data Disclosure Cases*,
2024 WL 3416511 (N.D. Cal. July 15, 2024)....12

*Bigelow v. Virginia*,
421 U.S. 809 (1975)....2

*Boddie v. Am. Broad. Cos., Inc.*,
731, 737 (6th Cir. 1984)....7

*Boone v. Ill. Dep't of Corrections*,
71 F.4th 622 (7th Cir. 2023) ....4, 10

*Brahm v. Hosp. Sisters Health System*,
2024 WL 3226135 (W.D. Wis. June 28, 2024) ....12

*BT Bourbonnais Care, LLC v. Norwood*,
866 F.3d 815 (7th Cir. 2017) ....10

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982) ....1, 6

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....2, 6, 8

*Citizens Ins. Co. of Am. v. Mullins Food Products, Inc.*,
719 F. Supp. 3d 822 (N.D. Ill. 2024)....4

*Cooper v. Mt. Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)....................12

*Dahlstrom v. Sun-Times Media, LLC*,
777 F.3d 937 (7th Cir. 2015) ....................10

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) ....................1, 2, 6

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ....................12

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................2, 8

*Fahey v. Kolcun Tree Care, LLC*,
2023 WL 4448012 (11th Cir. 2023) ....................5

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)....................12

*In re Group Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023)....................12

*Helvering v. Gregory*,
69 F.2d 809 (2d Cir. 1934) ....................5

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000) (Posner, J.) ....................1, 5

*Jarrell v. Adena Health System*,
2025 WL 81305 (S.D. Ohio Jan. 13, 2025) ....................12

*K.L. v. Legacy Health*,
2024 WL 4794657 (D. Or. Nov. 14, 2024)....................12

*Kane v. U. of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)....................12

*Kurowski v. Rush System for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ....................12

*Kurowski v. Rush System for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024)....................12

*Kurowski v. Rush System for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ....................12

*Kurowski v. Rush System for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ....................12

*In re Lion Air Flight JT 610 Crash*,
110 F.4th 1007 (7th Cir. 2024) ....................4

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) ....................7

*M.R. v. Salem Health Hosps. and Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024)....................12

*Marden v. LMND Med. Group, Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024)....................12

*Mekhail v. N. Meml. Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024)....................12

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) ....................2, 6, 8

*Minn-Chem., Inc. v. Agrium, Inc.*,
657 F.3d 650 (7th Cir. 2011) ....................10

*Murphy v. Thomas Jefferson U. Hosps., Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) ....................12

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024)....................12

*Nienaber v. Overlake Hospital Medical Ctr.*,
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) ....................3, 9

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024) ....................12

*Okash v. Essentia Health*,
2025 WL 642913 (D. Minn. Feb. 27, 2025) ....................12

*Planned Parenthood Fed. of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) ....................7

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ....................12

*R.S. v. Prime Healthcare Services, Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ....................12

*Rodriguez v. FastMed Urgent Care, P.C.*,
741 F. Supp. 3d 352 (E.D.N.C. 2024)....................12

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ....................12

*Santoro v. Tower Health*,
2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ....................14

*Smart v. Main Line Health*,
2024 WL 2943760 (E.D. Pa. June 10, 2024) ....................12

*Smith v. Loyola U. Med. Ctr.*,
2024 WL 3338941 (N.D. Ill. July 9, 2024)....................12

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2010) ....................10, 14

*Strong v. LifeStance Health Group Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025) ....................12

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................2, 7, 8

*Sweat v. Houston Methodist Hosp.*,
2024 WL 3070184 (S.D. Tex. June 20, 2024)....................12

*T.D. v. Piedmont Healthcare, Inc.*,
2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) ....................14

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ....................10, 11

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) ....................1, 6

*United Airlines, Inc. v. Mesa Airlines, Inc.*,
219 F.3d 605 (7th Cir. 2000) ....................10, 13

*Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*,
425 U.S. 748 (1976)....................2

*W.W. v. Orlando Health, Inc.*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) ....................12

*Watkins v. Just Energy Group, Inc.*,
171 F. Supp. 3d 798 (N.D. Ill. 2016)....................3, 4

*Williams v. TMC Health*,
2024 WL 4364150 (D. Az. Sept. 30, 2024) .......... 3, 9, 12

*Woodman's Food Market, Inc. v. Clorox Co.*,
833 F.3d 743 (7th Cir. 2016) .......... 10

**Statutes & Rules**

18 U.S.C. § 2510 .......... 8

18 U.S.C. § 2520 .......... 13

18 U.S.C. § 2710 .......... 10

18 U.S.C. § 2721 .......... 10

28 U.S.C. § 1292 .......... 4, 11, 12

FED. R. CIV. P. 12(b)(6) .......... 10, 13

## INTRODUCTION

There are two claims remaining in the case. The key claim of these is under the federal Wiretap Act. The key issue under the Wiretap Act is in turn the party's one-consent rule, which the parties extensively argued on Edward-Elmhurst's motion to dismiss.

This motion seeks reconsideration of the Court's opinion on the Wiretap Act, and in the alternative certification for interlocutory appeal to the Seventh Circuit under 28 U.S.C. § 1292(b).

To take reconsideration first: the Court held that the only purpose required under the statute must be to commit an act alone. (Dkt. # 53, Op. & Ord. 11.) Even committing that act negligently would be sufficient for the exception to apply, because negligence is a tort. (*Id.*) According to the Court, the purpose for taking the act is irrelevant, so long as the act itself is purposeful. (*Id.*)

That analysis is contrary to Seventh Circuit precedent, which requires an actual criminal or tortious purpose for the exception to apply—initially described by the appellate court as an "intent to harm." *See By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) ("We think it is the use of the interception ***with intent to harm*** rather than the fact of interception that is critical to liability, and there was no use of the interception here.") (emphasis added); *Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (interpreting exception, holding "[t]his means Thomas must show that Pearl either intended to break the law or commit a tort against him in order to prove a violation of the federal statute"); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (refusing to apply the exception where "[t]he defendants did not order the camera-armed testers into the Desnick Eye Center *in order to commit a crime or a tort*") (emphasis added); *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) ("Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, *unless the person both is not acting under color of state law* ***and has a criminal or tortious purpose***.") (Posner, J.) (emphasis added).

Under the Court's interpretation, the exception once again collapses on itself. The conduct regulated by the Wiretap Act is the alleged wrongful interceptions of communications. *See* 18 U.S.C. § 2510(4), 18 U.S.C. §§ 2511(a)-(e). The Court's "changing lanes" hypothetical (Dkt. # 53, Op. & Ord. 11), once again contemplates the act of recording could also be the act that triggers the exception, irrespective of any alleged "bad purpose," as the Seventh Circuit put it in *In re High Fructose*, 216 F.3d at 624 (describing "the exception in section 2511[(2)](d) for bad purpose").

The uniform law, from the outset of cases analyzing the exception, is to the contrary. *See, e.g.*, *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 145 (3d Cir. 2015) ("all authority of which we are indicates that the criminal or tortious acts contemplated by § 2511(2)(d) are acts secondary to the acquisition involving tortious or criminal use of the interception's fruits"); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1203 (9th Cir. 1999) (same); *Payne v. Norwest Corp.*, 911 F. Supp. 1299, 1304 (D. Mt. 1995), *aff'd in part and rev'd in part*, 113 F.3d 1079 (9th Cir. 1997) ("the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use—was criminal or tortious") (emphasis in original).

Under all accounts, the focus of the tortious or criminal conduct exception analysis is on the purpose: was the defendant's alleged purpose in making the recording unlawful? If the purpose was lawful, then the exception applies, even if the defendant's actions in using the recording might ultimately turn out to violate some other law. *Desnick*, 44 F.3d at 1353; *Med. Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Az. 1998) (interpreting *Desnick*; "The Seventh Circuit has similarly recognized that the proper inquiry is not whether a defendant ultimately committed a tort, but whether she made the recording with the specific purpose to commit a tort.").

As applied to this case, Edward-Elmhurst agrees with the Court that the fact that there is a financial motivation at issue does not automatically mean that the exception cannot apply. (Dkt. # 53, Op. & Ord. 9-10.) Plainly, recordings made for the purposes of blackmail and extortion can have a financial purpose and would fall within the scope of the exception. *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) (analyzing legislative history).

The issue where Edward-Elmhurst and the Court part ways is on this: Unlike blackmail and extortion, not all financial purposes are also criminal and tortious. As most relevant here, marketing being one of them. Far from being criminal or tortious, the United States Supreme Court has held that the basic right to engage in commercial speech is protected by the First Amendment to the United States Constitution. *See Bigelow v. Virginia*, 421 U.S. 809, 825 (1975); *Va. State Bd. of Pharm. v. Va. Citizens Cons. Council, Inc.*, 425 U.S. 748, 765 (1976); *Bates v. State Bar of Az.*, 433 U.S. 350, 376-77 (1977); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) ("the creation and dissemination of information are speech within the meaning of the First Amendment").

It may be as the case progresses plaintiffs can ultimately show Edward-Elmhurst's actions crossed the line to violate some other law, including the Health Insurance Portability and Accountability Act of 1996. But this does not mean that the tortious or criminal conduct exception to the one-party consent rule should also apply, when Edward-Elmhurst's undisputed and plainly alleged purpose itself was lawful. *See Nienaber v. Overlake Hospital Medical Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (rejecting allegations that an alleged digital marketing and analytics purpose was sufficient to invoke the exception); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Az. Sept. 30, 2024); *see also Julie Roberts, et al. v. Charlotte Mecklenburg Hospital Authority d/b/a Atrium Health*, Dkt. # 50, Ord., Civ. Act. No. 3:24-cv-00382 (W.D.N.C. Mar. 20, 2025) (same; attached as Exhibit A).

Accordingly, for these and the other reasons set forth below, the Court should reconsider its decision on the federal Wiretap Act. In the alternative, the Court should certify the following question to the Seventh Circuit for immediate interlocutory review under section 1292(b):

Whether Stein and Miller's allegations about alleged illegal wiretapping made in connection with digital marketing on Edward-Elmhurst's public websites state a plausible claim for relief under the federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, as a matter of law.

## ARGUMENT

### I. STANDARDS OF REVIEW.

"The court has the inherent authority to reconsider its interlocutory orders because such orders 'may be revised at any time before the entry of judgment adjudicating all the claims.'" *Watkins v. Just Energy Group, Inc.*, 171 F. Supp. 3d 798, 801 (N.D. Ill. 2016) (quoting Fed. R. Civ. P. 54(b)).

"A motion to reconsider an interlocutory order serves a limited purpose in federal litigation; it is not a vehicle to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier." *Id.* "Rather, a motion to reconsider allows a party to direct to the court's attention to manifest errors of fact or law, a significant change in the law or facts, the court's misunderstanding of a party's argument, or a party's contention that the court ruled on an issue that was not properly before it." *Id.*; *see also generally Citizens Ins. Co. of Am. v. Mullins Food Products, Inc.*, 719 F. Supp. 3d 822, 826 (N.D. Ill. 2024) (same).

For section 1292(b), "[w]e may accept interlocutory appeals only if they present questions of law that are controlling and contestable, the resolution of which would speed up the litigation." *Boone v. Ill. Dep't of Corrections*, 71 F.4th 622, 625 (7th Cir. 2023); *see also In re Lion Air Flight JT 610 Crash*, 110 F.4th 1007, 1011 (7th Cir. 2024).

In the parlance of section 1292(b), "[t]he order must present a 'controlling question of law,' difficult enough to leave 'substantial ground for difference of opinion,' and whose resolution will 'materially advance the ultimate termination of the litigation." *In re Lion Air Flight JT 610*, 110 F.4th at 1011 (quoting 28 U.S.C. § 1292(b)).

## II. THE COURT MISAPPLIED THE LAW IN HOLDING THAT THE TORTIOUS OR CRIMINAL EXCEPTION DOES NOT REQUIRE A TORTIOUS OR CRIMINAL PURPOSE.

Through this motion, Edward-Elmhurst Health first respectfully submits that the Court should reconsider in its entirety the Court's ruling on the Wiretap Act motion to dismiss. (Dkt. # 53, Op. & Ord. 5-11.) The Court held that "[t]he statute does not require a 'criminal or tortious purpose.'" (*Id.* at 11.) To the contrary, under the Court's interpretation of the statutory text, all that is required is an "act" that is purposeful, irrespective or whether or not the defendant actually had a criminal or tortious purpose in mind at the time of the recording. (*Id.*)

As a textual matter, Edward-Elmhurst submits that this interpretation of the statutory text is incorrect.[1] More relevant for purposes of the present motion, however, it is directly contrary to Seventh Circuit precedent. The Seventh Circuit has made clear that the defendant's purpose at the time of the recording is the controlling question for application of the exception, not simply the committing of any purposeful act. As the Court held in *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621 (7th Cir. 2000): "Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, unless the person both is not acting under color or state law and has a criminal or tortious purpose." *Id.* at 624.

[1] The Second Circuit held the opposite: "Congress chose the word 'purpose' for a reason." *Caro v. Weintraub*, 618 F.3d 94, 100 (2nd Cir. 2010). "Therefore, the offender must have as her objective a tortious or criminal or tortious or result." *Id.* "Had congress intended for the act of recording itself to provide the tortious intent necessary, it could have chosen to define the exception in terms of interception of oral communications *resulting in* a tortious or criminal act." *Id.* (emphasis in original). "But Congress limited the cause of action to instances where one party to the conversation *deliberately seeks to harm* the other participant through the information intercepted." *Id.* (emphasis added); *compare Helvering v. Gregory*, 69 F.2d 809, 810–11 (2d Cir. 1934) (L. Hand, J.), *aff'd*, 293 U.S. 465 (1935) ("the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes").

This language is directly at odds with the Court's holding that "[t]he statute does not require a 'criminal or tortious purpose.'" (Dkt. # 53, Op. & Ord. 11.) In an earlier opinion interpreting the exception, the Seventh Circuit held that "it is the use of the interception with intent to harm rather than the fact of interception that is critical to liability, and there was no use of the interception here." *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982).

And in what has become one of the leading cases interpreting the exception's purposeful requirement, the Seventh Circuit refused to apply the exception where "[t]he defendants did not order the camera-armed testers into the Desnick Eye Center *in order to commit a crime or a tort*." *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) (emphasis added).

This is so notwithstanding the fact that in *Desnick* there were numerous other alleged independent acts at issue in connection with the recording, including both fraud and trespass. *Id.* at 1351. Yet, the Seventh Circuit refused to apply the exception, because "there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purpose of defaming plaintiffs with the glare machine." *Id.*; *see also Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993) (interpreting exception, holding "Thomas must show that Pearl either intended to break the law or commit a tort against him in order to prove a violation of the federal statute").

The Seventh Circuit is not alone in this interpretation. As the Second Circuit has explained: "There is a temporal thread that runs through the fabric of the statute and the case law." *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010). "At the time of the recording the offender *must intend to use the recording to commit a criminal or tortious act*." *Id.* (emphasis added). "*Merely intending to record the plaintiff is not enough.*" *Id.* (emphasis added). "*If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation*." *Id.* (emphasis added).

The other circuit courts of appeals are in accord. *See Meredith v. Gavin*, 446 F.2d 794, 798-99 (8th Cir. 1971) (holding exception did not apply where defendant secretly recorded private conversation with plaintiff in connection with worker's compensation proceeding to use at trial; "it seems apparent from the context in which the statute was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed"); *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1203 (9th Cir. 1999) (refusing to apply the exception because "[a]lthough ABC's taping may well have been a tortious invasion of privacy under state law, plaintiffs have produced no probative evidence that ABC had an illegal or tortious purpose when it made the tape"); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180, at *4 (11th Cir. 2001) (refusing to apply where plaintiffs' amended expressly alleged defendant "recorded the session with the intent to broadcast the recording as part of a news report that would cast plaintiffs as members of a cult"); *Boddie v. Am. Broad. Cos., Inc.*, 731, 737 (6th Cir. 1984) (analyzing legislative history; "The amendment, according to Senator Hart, would prohibit an interception 'when the party acts in a way with intent to injure the other party to the conversation in any other way.") (quoting 114 Cong.Rec. 14,694 (1968)); *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022) ("*The recording party must also have the independent criminal or tortious purpose at the time the recording was made*.") (emphasis added, quoting *United States v. McTiernan*, 695 F.3d 882, 890 (9th Cir. 2012)).

Based on the above precedent, the Court should reconsider the Court's holding that "[t]he statute does not require a 'criminal or tortious purpose.'" (Dkt. # 53, Op. & Ord. 11.) *See also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001) ("Section 2511(2)(d)'s legislative history and caselaw make clear that the 'criminal' or 'tortious' purpose

requirement is to be construed narrowly, *covering only acts accompanied by a specific contemporary intention to commit a crime or a tort*.") (emphasis added); *Medical Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Az. 1998) ("Even if Defendants were found liable for fraud, the question is not whether they are ultimately liable for conduct found to be tortious, but whether, at the time the recording took place, they recorded the conversation with the express intent of committing a tort.").

## III. THE COURT SHOULD RECONSIDER THE ENTIRETY OF ITS WIRETAP ACT DECISION.

From this foundation, Edward-Elmhurst respectfully submits further that the Court should reconsider its decision on the Wiretap Act claim in its entirety. When the focus is solely on the defendant's purpose in making the alleged interception, and plaintiffs' allegations unambiguously show that the defendant's alleged purpose was marketing (Am. Compl. ¶¶ 21-22, 29, 51, 69, 85, 92, 137, 278, 281), this purpose falls outside the scope of the exception as a matter of law.

This is not an argument that all financial purposes take the alleged interception outside the scope of the exception. Edward-Elmhurst agrees with the Court that a financial purpose does not automatically inoculate an otherwise illegitimate recording. (Dkt. # 53, Op. & Ord. 9.)

But the nature of the alleged financial purpose matters. Here, Stein and Miller do not allege that Edward-Elmhurst had any criminal or tortious purpose in mind at the time of making the alleged interceptions. Their theory is that Edward-Elmhurst's conduct ultimately violated the law. Plaintiffs' allegations are clear and unambiguous on Edward-Elmhurst's alleged purpose, which was marketing: "The sole purpose of the use of the Meta Pixel on Defendant's Web Properties was marketing and profits." (Am. Compl. ¶ 278; *id.*, ¶¶ 21-22, 29, 51, 69, 92, 137, 281 (all same); *see also id.*, ¶ 85 (alleged purpose to "target specific customers by utilizing data to build incredibly fulsome and robust profiles for the purposes of retargeting and future marketing").

In this context, when the exception analysis is properly focused on the defendant's alleged purpose in making the alleged interception, and not on whether the defendant's alleged conduct ultimately violated the law, the more persuasive authority holds that a purpose to engage in digital marketing is not criminal or tortious as a matter of law. *See Nienaber v. Overlake Hospital Medical Ctr.*, 2025 WL 692097, at *13 (W.D. Wash. Mar. 4, 2025) (rejecting allegations that an alleged digital marketing and analytics purpose was sufficient to invoke the exception); *Williams v. TMC Health*, 2024 WL 4364150, at *4 (D. Az. Sept. 30, 2024) (same); *Julie Roberts, et al. v. Charlotte Mecklenburg Hosp. Authority d/b/a Atrium Health*, Dkt. # 50, Ord., Civ. Act. No. 3:24-cv-00382 (W.D.N.C. Mar. 20, 2025) (same); *see also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518-19; *Katz-Lacabe v. Oracle America, Inc.* 2024 WL 1471299, at *3, 5 (N.D. Cal. Apr. 3, 2024) ("The fact data collection or sales might at some later point be deemed tortious does not justify application of the crime-tort exception."); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (same); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) ("Cohen fails to demonstrate that Defendants' primary purpose was to commit a tort. Instead, he claims that Defendants' conduct amounted to a tort."); *compare Planned Parenthood Fed. of Am.*, 51 F.4th at 1136 n.8 ("fundraising is not a criminal purpose").

It may turn out Edward-Elmhurst's actions violated the law, perhaps even HIPAA itself. (Dkt. # 53, Op. & Ord. at 8 ("Courts in this district have recognized that disclosing health information in violation of HIPAA can provide the predicate for a claim under the ECPA.").) But as stated, courts interpreting the exception, including the Seventh Circuit, have held an alleged legal violation does not control the exception analysis. *Desnick*, 44 F.3d at 1353; *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d at 518-19; *Medical Lab. Mang't Consultants*, 30 F. Supp. 2d at 1205; *Katz-Lacabe*, 2024 WL 1471299, at *3; *Cohen*, 2018 WL 3392877, at *3-4.

The analysis is focused solely on the defendant's alleged purpose in making the interception. Which in turn should also mean whether or not Edward-Elmhurst might ultimately be shown to have violated HIPAA does not turn the outcome of the exception analysis in one way or the other. For all of these reasons, the Court should reconsider its holding on the Wiretap Act, and grant Edward-Elmhurst's motion to dismiss on this claim as a matter of law.

## IV. In the Alternative, the Court Should Certify the Tortious or Criminal Conduct Question to the Seventh Circuit for Immediate Review.

In the alternative, the Court should certify the following question to the Seventh Circuit for immediate appellate review:

Whether Stein and Miller's allegations about alleged illegal wiretapping made in connection with digital marketing on Edward-Elmhurst's public websites state a plausible claim for relief under the federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, as a matter of law.

This proposed question involves the key issue on the key claim in the case and whether or not plaintiffs have stated a plausible claim on that claim as a matter of law under Rule 12(b)(6). The Seventh Circuit has repeatedly held that section 1292(b)'s controlling question of law requirement is met in this precise situation, particularly where there is a federal claim for statutory penalties in play. *See United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607-08 (7th Cir. 2000) (preemption question under the Airline Deregulation Act of 1978); *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 818-19 (7th Cir. 2017) (whether "the current language of [42 U.S.C.] section 1396a(a)(13)(A) provides a private right of action enforceable under section 1983"); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536-37 (7th Cir. 2010) (whether Video Privacy Protection Act, 18 U.S.C. § 2710, afforded a private right of action for statutory damages based on "destruction of old records" provision); *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743, 745-46 (7th Cir. 2016) (whether product size is a "service" or "facility"

under Robinson-Patman Act); *Minn-Chem., Inc. v. Agrium, Inc.*, 657 F.3d 650, 656 (7th Cir. 2011), *rev'd on rehearing en banc by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012) (whether complaint alleged sufficient facts to meet Sherman Act's extraterritorial exception); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937, 942 (7th Cir. 2015) (scope of "personal information" and First Amendment issues under the Driver's Privacy Protection Act, 18 U.S.C. § 2721 *et seq.*); *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 624-25 (7th Cir. 2010) (whether second amended complaint stated a plausible antitrust price-fixing claim under *Twombly*); *Boone v. Illinois Dep't of Corrections*, 71 F.4th 622, 624-25 (7th Cir. 2023) (legal effect of statutory amendment to Illinois Health Care Right to Conscience Act).

As the court stated in *In re Text Messaging Antitrust Litigation*, 630 F.3d 622, 624 (7th Cir. 2010), review is appropriate because "[t]he interlocutory appeal that we are asked to authorize in this case does not seek to overturn any findings of fact." *Id.* "The defendants are arguing rather that even if all the factual allegations in the complaint are true, the complaint is insufficiently plausible to satisfy *Twombly*." *Id.* "They are asking us to apply a legal standard—the pleading standard set forth in *Twombly*—to a set of factual allegations taken as true for purposes of this appeal." *Id.*; *see also Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) ("We think 'question of law' as used in section 1292(b) has reference to a common question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgement had raised a genuine issue of material fact.").

It may turn out that the Seventh Circuit agrees with the Court's interpretation of the statute. But, as the above case law shows, the question of how the tortious or criminal conduct exception should apply to digital marketing allegations is contestable. Indeed, in a case decided just yesterday the Western District of North Carolina dismissed the same basic Wiretap Act claim against another

healthcare provider with prejudice under Rule 12(b)(6). In doing so, the court held "[e]ven taking Plaintiffs' factual allegations as true, Defendant allegedly used lawfully obtained IIHI for advertising purposes or for commercial gain, but there are no alleged facts from which the Court could conclude that Defendant did so for the *purpose* of committing a criminal or tortious act." (Ex. A, *Charlotte Mecklenburg Hospital Auth.*, at pg. 6 (emphasis in original).)

However the Seventh Circuit ultimately decides the question, whether the appellate court ultimately agrees with this Court's decision is not, the outcome is contestable, and the legal dispute is legitimate at the least, based on all the authority set forth above. Moreover, certifying the question now will allow the Seventh Circuit to provide guidance not only to this Court but to the numerous other courts in the Seventh Circuit and across the nation confronting the same basic federal Wiretap Act claim, and in particular against not-for-profit health care providers. [2]

---

[2] *Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931, 937–39 (N.D. Ill. 2023); *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 842–44 (N.D. Ill. 2023); *Kurowski v. Rush System for Health*, 2023 WL 8544084, at *2–3 (N.D. Ill. Dec. 11, 2023); *In re Group Health Plan Litig.*, 709 F. Supp. 3d 707, 719–20 (D. Minn. 2023); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024); *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065–66 (C.D. Cal. 2024); *Kane v. U. of Rochester*, 2024 WL 1178340, at *4–8 (W.D.N.Y. Mar. 19, 2024); *Okash v. Essentia Health*, 2024 WL 1285779, at *3–5 (D. Minn. Mar. 26, 2024); *Mekhail v. N. Meml. Health Care*, 726 F. Supp. 3d 916, 926–28 (D. Minn. 2024); *B.K. v. Eisenhower Med. Ctr.*, 2024 WL 2037404, at *2–4 (C.D. Cal. Apr. 11, 2024); *Santoro v. Tower Health*, 2024 WL 1773371, at *3–4 (E.D. Pa. Apr. 24, 2024); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *8–10 (N.D. Cal. Apr. 11, 2024); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901–02 (C.D. Cal. 2024); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1094–96 (W.D. Wash. 2024); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024); *Smart v. Main Line Health*, 2024 WL 2943760, at *3–4 (E.D. Pa. June 10, 2024); *Sweat v. Houston Methodist Hosp.*, 2024 WL 3070184, at *3–4 (S.D. Tex. June 20, 2024); *Brahm v. Hosp. Sisters Health System*, 2024 WL 3226135, at *5–6 (W.D. Wis. June 28, 2024); *Marden v. LMND Med. Group, Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *Smith v. Loyola U. Med. Ctr.*, 2024 WL 3338941, at *6–7 (N.D. Ill. July 9, 2024); *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024); *Kurowski v. Rush System for Health*, 2024 WL 3455020, at *2–6 (N.D. Ill. July 18, 2024); *Rodriguez v. FastMed Urgent Care, P.C.*, 741 F. Supp. 3d 352, 363–64 (E.D.N.C. 2024); *Cooper v. Mt. Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 378–83 (S.D.N.Y. 2024); *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024); *M.R. v. Salem Health Hosps. and Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024); *A.D. v. Aspen Dental Mgt., Inc.*, 2024 WL 4119153, at *2–3 (N.D. Ill. Sept. 9, 2024); *Gay v. Garnet Health*, 2024 WL 4203263, at *2–4 (S.D.N.Y. Sept. 16, 2024); *Williams v. TMC Health*, 2024 WL 4364150, at *3–4 (D. Ariz. Sept. 30, 2024); *Murphy v. Thomas Jefferson U. Hosps., Inc.*, 2024 WL 4350328, at *4–5 (E.D. Pa. Sept. 30, 2024); *K.L. v. Legacy Health*, 2024 WL 4794657, at *5–6 (D. Or. Nov. 14, 2024); *T.D. v. Piedmont Healthcare, Inc.*, No. 1:23-CV-5416-TWT, 2024 WL 5284883, at *3–4 (N.D. Ga. Dec. 10, 2024); *R.S. v. Prime Healthcare Services, Inc.*, 2025 WL 103488, at *4–7 (C.D. Cal. Jan. 13, 2025); *Jarrell v. Adena Health System*, 2025 WL 81305, at *2–4 (S.D. Ohio Jan. 13, 2025); *Strong v. LifeStance Health Group Inc.*, 2025 WL 317552, at *3–5 (D. Ariz. Jan. 28, 2025); *Okash v. Essentia Health*, 2025 WL 642913, at *3–4 (D. Minn. Feb. 27, 2025); *W.W. v. Orlando Health, Inc.*, 2025 WL 722892, at *6–7 (M.D. Fla. Mar. 6, 2025).

Finally, certifying the question now will materially advance the ultimate termination of this litigation. On this point, "all that section 1292(b) requires as a precondition to an interlocutory appeal, once it is determined that the appeal presents a controlling question of law on which there is a substantial ground for a difference of opinion, is that an immediate appeal *may* materially advance the ultimate termination of the litigation." *Sterk*, 672 F.3d at 536 (emphasis in original).

As the Seventh Circuit held in *Sterk*, which involved the same situation in terms of a certification of the key federal statutory damages claim in the case: "If the appeal is not allowed, and the suit proceeds in the district court on both the disclosure and the destruction claims, the completion of the litigation will take longer than if the destruction claim is out of the case, especially since that claim appears to be the plaintiffs' main one, with the disclosure claim perhaps just a life jacket." (*Id.*) "Moreover, uncertainty about the status of the destruction claim may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation." *Id.* "That is enough to satisfy the 'may materially adverse' clause of section 1292(b); neither the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court." *Id*. at 536.

This same analysis applies here. Stein and Miller's federal Wiretap Act claim is the key claim in the case. Following Judge Kennelly's decision in *Rush III*, Stein and Miller withdrew their remand motion and amended their complaint specifically and solely to include the claim, and it is their only claim that authorizes statutory penalties. *See* 18 U.S.C. 2520(c)(2)(A), (B); *but cf. Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 703 (N.D. Ill. 2012) ("Illinois law requires 'legally cognizable *present* injury or damage' to sustain a negligence claim'") (quoting *Yu v. Int'l Bus. Machs. Corp.*, 314 Ill.App.3d 892, 897 (2000) (emphasis in original)).

These damages will be difficult to show. *T.D. v. Piedmont Healthcare*, 2024 WL 3972984, at *2-3 (N.D. Ga. Aug. 28, 2024) ("No facts are alleged that would explain how receiving targeted advertisements from Facebook and Piedmont would plausibly cause any of the Plaintiffs to suffer these damages."), *reconsideration denied* Opin. & Ord., Case No. 1:23-cv-05416-TWT, Dkt. # 51 (N.D. Ga. Dec. 10, 2024); *Santoro v. Tower Health*, 2024 WL 1773371, at *6 (E.D. Pa. Apr. 24, 2024) (same; "without specific allegations about what information plaintiffs searched on the website (and the consequences of those searches), plaintiffs have not adequately plead causation"), *reconsideration denied* 2024 WL 4771398, at *4 (E.D. Pa. Nov. 13, 2024); *Kurowski v. Rush System for Health*, 2024 WL 3455020, at *7 (N.D. Ill. July 18, 2024) ("As the Court previously explained, Kurowski has not plausibly alleged that she suffered actual damage.") (citing *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 845-847 (N.D. Ill. 2023)).

## CONCLUSION

As the Seventh Circuit held in *Ahrenholz*: "It is equally important, however, to emphasize the duty of the district court and of our court as well to allow an immediate appeal when the statutory criteria are met." 219 F.3d at 677.

The Court should grant this motion, and dismiss Stein and Miller's federal Wiretap Act claim with prejudice under Rule 12(b)(6). In the alternative, the Court should certify the following question to the Seventh Circuit for immediate interlocutory appellate review: Whether Stein and Miller's allegations about alleged illegal wiretapping made in connection with digital marketing on Edward-Elmhurst's public websites state a plausible claim for relief under the federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, as a matter of law.

Oral argument is respectfully requested on this motion at the convenience of the Court.

Dated: March 21, 2025

Respectfully Submitted,

By: */s/ David Carney*

Bonnie Keane DelGobbo
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, IL 60606
(312) 416-6200
bdelgobbo@bakerlaw.com

David A. Carney
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, OH 44114
(216) 621-0200
dcarney@bakerlaw.com

*Counsel for defendant*
*Edward-Elmhurst Health*