**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ARNOLD STEIN and DIANE MILLER, *individually and on behalf of all others similarly situated*, Plaintiffs, v. EDWARD-ELMHURST HEALTH, Defendant. | Case No. 1:23-cv-14515<br>Judge Steven C. Seeger |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**<u>MOTION FOR RECONSIDERATION OR FOR INTERLOCUTORY APPEAL</u>**

James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
Michael J. Casas
**STEPHAN ZOURAS, LLC**
222 W. Adams Street, Suite 2020
Chicago, IL 60606
(312) 233-1550
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com
cmitchell@stephanzouras.com
mcasas@stephanzouras.com

David S. Almeida
Britany A. Kabakov
**ALMEIDA LAW GROUP, LLC**
849 W. Webster Ave.
Chicago, Illinois 60614
(708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

*Counsel for Plaintiffs & the Classes*

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

LEGAL STANDARD ..... 2

ARGUMENT ..... 3

I. This Court Correctly Applied the Law in its Order ..... 3

II. In the Alternative, the Court Should Not Certify the Tortious or Criminal Conduct Question to the Seventh Circuit For Interlocutory Review.. ..... 8

A. Application of the Crime-Tort Exception Requires Factual Investigation. ..... 9

B. There is no Substantial Ground for Difference of Opinion. ..... 11

C. Interlocutory Appeal will Not Materially Advance the Litigation. ..... 13

CONCLUSION ..... 15

## TABLE OF AUTHROITIES

**Cases** **Page(s)**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) .................... 8

*A.J. v. LMND Med. Grp., Inc.*,
2024 WL 4579143 (N.D. Cal. Oct. 25, 2024).................... 8

*Asher v. Baxter Int'l, Inc.*,
505 F.3d 736 (7th Cir. 2007) .................... 3

*Brodsky v. HumanaDental Ins. Co.*,
2014 WL 4813147 (N.D. Ill. Sept. 29, 2014) .................... 13, 14

*BT Bourbonnais Care, LLC v. Norwood*,
866 F.3d 815 (7th Cir. 2017) .................... 11

*By-Prod Corp. v. Armen-Berry Co.*,
668 F.2d 956 (7th Cir. 1982) .................... 3

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010).................... 3, 5, 6

*Consumer Fin. Prot. Bureau v. TransUnion*,
674 F. Supp. 3d 467 (N.D. Ill. 2023) .................... 15

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024).................... 8, 9, 10

*Desnick v. Am. Broad. Cos. Inc.*,
44 F.3d 1345 (7th Cir. 1995) .................... 5, 6, 7

*Doe v. Genesis Health Sys.*,
2025 WL 1000192 (C.D. Ill. Mar. 18, 2025).................... 7

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. 2023) .................... 10

*Flynn v. Exelon Corp.*,
2022 WL 267915 (N.D. Ill. Jan. 28, 2022) .................... 12

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025).................... 8

*Hartley v. Univ. of Chicago Med. Ctr.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ... 8

*In re DoubleClick, Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y 2001) ... 7

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ... 10

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000) ... 4, 5

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ... 11

*In re Turkey Antitrust Litig.*,
2024 WL 5440057 (N.D. Ill. Oct. 16, 2024) ... 3

*Isaacson v. Keck, Mahin & Cate*,
875 F. Supp. 478 (N.D. Ill. 1994) ... 15

*Jarrell v. Adena Sys.*,
2025 WL 81305 (S.D. Ohio Jan. 13, 2025) ... 8

*Katz-Lacabe v. Oracle America, Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) ... 7

*Kurowski v. Rush Sys. for Health*,
2024 WL 3455020 (N.D. Ill. July 18, 2024) ... 8, 9

*Leff v. Deutsche Bank AG*,
2009 WL 4043375 (N.D. Ill. Nov. 20, 2009) ... 12, 13

*Lucas v. Fox News Network, LLC*,
248 F.3d 1180 (11th Cir. 2001) ... 6

*Lugo v. Inova Health Care Servs.*,
2025 WL 905191 (E.D. Va. Mar. 25, 2025) ... 13

*M.R. v. Salem Health Hosps. & Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024) ... 8

*Mayer v. Midwest Physician Admin. Servs., LLC*,
2025 WL 963779 (N.D. Ill. Mar. 31, 2025) ... 8, 15

*Medical Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*,
30 F. Supp. 2d 1182 (D. Az. 1998) ... 7

*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) .......... 8

*Munchkin, Inc. v. TOMY Int'l, Inc.*,
2023 WL 11921670 (N.D. Ill. Mar. 31, 2023) .......... 3

*Murphy v. Thomas Jefferson Univ. Hosps. Inc.*,
2024 WL 4350328 (E.D. Pa. Sept. 30, 2024) .......... 8

*Planned Parenthood Fed. Of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 7

*Pryor v. Corrigan*,
2022 WL 1607395 (N.D. Ill. May 20, 2022) .......... 2

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) .......... 8

*Roberts v. Charlotte Mecklenburg Hosp. Auth.*,
2025 WL 880538 (W.D.N.C. Mar. 20, 2025) .......... 12

*Smith v. Loyola Univ. Med. Ctr.*,
2024 WL 3338941 (N.D. Ill. July 9, 2024) .......... 8

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .......... *passim*

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) .......... 11, 14

*Strong v. LifeStance Health Grp. Inc.*,
2025 WL 317552 (D. Ariz. Jan. 28, 2025) .......... 8

*Sussman v. American v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 5

*Sweat v. Houston Methodist Hosp.*,
2024 WL 3070184 (S.D. Tex. June 20, 2024) .......... 8

*T.S. v. Cnty. of Cook, Illinois*,
568 F. Supp. 3d 940 (N.D. Ill. 2021) .......... 12, 13

*TapiaRendon v. United Tape & Finishing Co. Inc.*,
2024 WL 406513 (N.D. Ill., Feb. 2, 2024) .......... 2

*Thomas v. Pearl*,
998 F.2d 447 (7th Cir. 1993) .......... 6

*U.S. Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*,
195 F. Supp. 3d 996 (N.D. Ill. 2016) .......... 10

*United Airlines, Inc. v. Mesa Airlines, Inc.*,
219 F.3d 605 (7th Cir. 2000) .......... 11

*United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*,
2012 WL 13209677 (N.D. Ill. Dec. 10, 2012) .......... 12

*W.W. v. Orlando Health, Inc.*,
2025 WL 722892 (M.D. Fla. Mar. 6, 2025) .......... 8

*WEC 98C-5 LLC v. Saks Inc.*,
2023 WL 11884362 (N.D. Ill. Jan. 20, 2023) .......... 13

*Woodman's Food Mkt., Inc. v. Clorox Co.*,
2015 WL 13547584 (W.D. Wis. July 17, 2015) .......... 11

**Statutes**

18 U.S.C. § 2510 .......... 1, 8

28 U.S.C. § 1292 .......... 2, 3, 15

42 U.S.C. § 1320 .......... 4

# INTRODUCTION

On February 21, 2025, this Court issued a Memorandum Opinion and Order holding, in relevant part, that because Plaintiffs plausibly alleged that Defendant Edward-Elmhurst Health ("Edward-Elmhurst" or "Defendant") disclosed their identifiable health information ("IIHI") in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), the crime-tort exception to the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*. (the "ECPA"), applied. *See Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *4-6 (N.D. Ill. Feb. 21, 2025) (the "Order"). The Court also denied Edward-Elmhurst's motion to dismiss Plaintiffs' negligence claim. *See id.* at *9 ("The complaint alleges that EEH collected Plaintiffs' sensitive medical information, and then disseminated that information to a third party without their consent. The collection of private health data is enough to give rise to a duty of care.").[1] On March 14, 2025, Defendant filed its answer, ECF No. 55, and the parties are currently preparing to start discovery.

On March 21, 2025, Edward-Elmhurst filed its Motion and Memorandum in Support for Reconsideration or for Interlocutory Appeal (the "Motion"). *See* ECF Nos. 56 & 57. Starting with its request for reconsideration, Edward Elmhurst mischaracterizes the applicable legal standard by suggesting its profit-driven motive cannot support liability as a matter of law. But Defendant's financial purpose could only be realized through its intentional decision to violate HIPAA by embedding and configuring tracking technology on its website to collect and disclose its patients' IIHI to third parties, such as Meta, without consent. Plaintiffs plausibly alleged that Defendant acted with a criminal purpose when it installed tracking technology onto its website to intercept its patients' HIPAA-protected communications, and its conduct fits within the crime-tort exception.

[1] The Court dismissed Plaintiffs' claim under the Illinois Eavesdropping Statute. *Id.* at *8.

If its request to have this Court revisit its decision is not granted, Edward Elmhurst also seeks to certify the issue of whether Plaintiffs' allegations about alleged illegal wiretapping made in connection with digital marketing on Edward-Elmhurst's public websites state a plausible claim for relief under the ECPA as a matter of law for interlocutory review. *See* Mot. at 10. But the question Edward Elmhurst is actually asking—which has already been answered by this Court—is whether the crime-tort exception is implicated when Plaintiffs allege that Defendant violated the law by disclosing their confidential IIHI without informed consent. As *none* of the requirements for interlocutory review are satisfied, Defendant's attempt to forestall discovery by seeking another bite of the proverbial apple should be rejected. Edward Elmhurst's request for reconsideration or in the alternative for interlocutory appeal should be denied.

## LEGAL STANDARD

As a general matter, "motions for reconsideration are disfavored," *Pryor v. Corrigan*, 2022 WL 1607395, at *2 (N.D. Ill. May 20, 2022), and are "not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion," *TapiaRendon v. United Tape & Finishing Co. Inc.*, 2024 WL 406513, at *2 (N.D. Ill., Feb. 2, 2024) (cleaned up). A motion to reconsider is only appropriate where a court has (i) misunderstood a party, (ii) "made a decision outside the adversarial issues presented to the court," or (iii) "made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Id.* (citation omitted).

A district court may only certify a non-final order for interlocutory appeal, further to 28 U.S.C. § 1292(b), where the movant demonstrates three requirements are met: (i) the order involves a "controlling question of law," (ii) there is a "substantial ground for difference of opinion" about that question of law and (iii) immediate appeal may "materially advance the

ultimate termination of the litigation." *In re Turkey Antitrust Litig.*, 2024 WL 5440057, at *1 (N.D. Ill. Oct. 16, 2024). Because interlocutory appeals are strongly disfavored, the requirements of § 1292(b) must be strictly construed because the device "must be used sparingly less interlocutory review increase the time and expense required for litigation." *Munchkin, Inc. v. TOMY Int'l, Inc.*, 2023 WL 11921670, at *3 (N.D. Ill. Mar. 31, 2023) (citing *Asher v. Baxter Int'l, Inc.*, 505 F.3d 736, 741 (7th Cir. 2007)).

## ARGUMENT

### I. THIS COURT CORRECTLY APPLIED THE LAW IN ITS ORDER.

Edward-Elmhurst first asks this Court to either find that it misapplied the law in holding that the crime-tort exception does not require a tortious or criminal purpose or reconsider the entirety of its ECPA decision. Both requests for reconsideration should be denied.

Edward-Elmhurst engages in mental gymnastics to argue that this Court's Order does not align with the crime-tort exception to the ECPA which, in and of itself, is not a basis for reconsideration. The Court accurately identified and applied the standard for the crime-tort exception and concluded that Plaintiffs' allegations fall squarely within it. *See Stein*, 2025 WL 580556, at *6. The very cases Defendant relies upon make clear that the exception turns on a party's *intent to use* intercepted communications to commit a criminal or tortious act. *See* Mot. at 5 (citing *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010) ("At the time of the recoding, the offender must intend to use the recording to commit a criminal or tortious act… ."); *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, 960 (7th Cir. 1982) ("[I]t is the use of the interception with intent to harm rather than the fact of interception that is critical to liability.")).

This Court's well-reasoned Order—which focuses on Plaintiffs' allegations of Edward-Elmhurst's intent to install and configure invisible trackers on its website to collect and transmit

their HIPAA-protected communications—properly applies the law. *See Stein*, 2025 WL 580556, at *6 ("The purpose must be to commit an act, and that act must be criminal or tortious. If the purpose is to do X, and if X is a crime or a tort, then the crime-tort exception to the one-party consent rule applies."). As this Court held, Plaintiffs allege that Defendant plausibly violated the ECPA when it intentionally installed tracking technology onto its web properties and configured them to specifically delineate the types of IIHI it wanted to acquire from its patients without consent. *Id*. The underlying crime to Plaintiffs' ECPA claim does *not* rely on the mere act of intercepting patient communications; rather, it is Defendants' intended use of the communications, namely, unauthorized disclosure of IIHI to third parties that violates HIPAA and gives rise to the crime-tort exception. *Id.*; *see also* ECF No. 31 ¶¶ 201-219; 42 U.S.C. § 1320(d)(6)(b)(1).

Additionally, the Court's Order aligns with Defendant's own cited authorities. *See* Mot. at 5 (citing *In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 626 (7th Cir. 2000) ("But when the law speaks of recording conversations with a criminal or tortious purpose, it has, we think, regard for the intended use of the recordings.")). Although Edward-Elmhurst cites authorities it claims support its position, it simultaneously disavows them, arguing that the proper inquiry is not a party's "intended use" of the intercepted communications but its "purpose in making the alleged interception." Mot. at 8. According to Defendant, because its "purpose" in engaging in the alleged conduct was to enrich itself, it could not have possessed the requisite "criminal or tortious purpose" to be held liable. *Id.* In other words, Edward-Elmhurst states that because its *purpose* (financial gain) was not unlawful, its *intent* to engage in the unlawful conduct to achieve its purpose cannot violate the ECPA.

Defendant takes specific exception to the Court's statement that "[t]he statue does not require a 'criminal or tortious purpose.'" Mot. at 5-6 (citing *Stein*, 2025 WL 580556, at *6). Yet,

Defendant deliberately ignores the Court's reasoning immediately following this sentence, where it elaborates that the crime-tort exception "requires a purpose of committing an act – an act that is criminal or tortious." *Id*. The Court's interpretation is directly in line with Seventh Circuit precedent. *See Desnick v. Am. Broad. Cos. Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995) ("The [ECPA] allow[s] one party to a conversation to record the conversation unless **h**is purpose in doing so is to commit a crime or a tort."); *see also Caro*, 618 F.3d at 99-100 (2d Cir. 2010) ("At the time of the recoding, the offender must intend to use the recording to commit a criminal or tortious act.").

Apparently lost on Defendant is the underlying process of how it makes money by using tracking technologies, such as the Pixel, in the first place. The primary way Edward-Elmhurst gains insight into how people use its website and sends targeted ads to its patients is by disclosing their IIHI to Meta. Meta analyzes the data intercepted by the Pixel and sends the results back to Defendant, thereby enabling it to send ads to specific patients with specific medical profiles. *See, e.g.*, ECF No. 31, ¶¶ 77-85, 278-89. Edward-Elmhurst, of course, was financially motivated and its motive was realized only through its intentional deployment of tracking technology designed to unlawfully intercept and disclose its patients' HIPAA-protected communications. The intentional nature of this conduct—knowingly sharing sensitive health data with a third party for profit—is what establishes the relevant criminal intent at the core of Defendant's actions.[2]

---

[2] Defendant agrees with this analysis and is consistent with this Court's Order. *See* Mot. at 8 ("Edward-Elmhurst agrees with the Court that a financial purpose does not automatically inoculate an otherwise illegitimate recording."); *see also Sussman v. American v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) ("The existence of the lawful purpose would not sanitize a tape that was also made for an illegitimate purpose; the taping would violate section 2511"); *Cf. Stein*, 2025 WL 580556, at *6 ("The existence of an underlying financial motivation does not mean that the act lacked a criminal or tortious purpose. That's like saying a bank robber's purpose was not to commit a crime – it was to make money").

Contrary to Edward-Elmhurst's recasting, Plaintiffs' theory is not "that Edward-Elmhurst's conduct ultimately violated the law." Mot. at 8. Plaintiffs allege that Defendant made the conscious decision to install tracking technology onto its website to intercept and disclose its patients' healthcare communications to third parties. ECF No. 31 ¶¶ 10-11, 15-16, 20, 28, 59, 76, 135, 178, 397. Thus, the moment Edward-Elmhurst installed the tracking tools and began intercepting patient communications, it had established the requisite criminal purpose of violating HIPAA. This is precisely the "temporal thread" Defendant claims is missing. *See* Mot. at 6 (quoting *Caro*, 618 F.3d at 99-100 ("At the time of the recording the offender must intend to use the recording to commit a criminal or tortious act… [m]erely intending to record the plaintiff is not enough.")).

Edward-Elmhurst's remaining authorities likewise fail to support its contorted interpretation of the ECPA and are otherwise readily distinguishable. For instance, Defendant cites cases where the crime-tort exception was rejected because plaintiffs failed to state a cause of action for the underlying crime or tort. *See* Mot. at 6-7. For example, in *Meredith v. Gavin*, the court concluded that "recording to use for impeachment purposes in a worker's compensation proceeding is not an 'injurious act.'" 446 F.2d 794, 798 (8th Cir. 1971); *see also Thomas v. Pearl*, 998 F.2d 447, 451-453 (7th Cir. 1993) (finding plaintiffs failed to state a cause of action for privacy torts); *Lucas v. Fox News Network, LLC*, 248 F.3d 1180, at *1-*4 (11th Cir. 2001) (holding plaintiffs failed to state a cause of action for invasion of privacy).

Edward-Elmhurst also refers to cases where plaintiffs pled an unlawful use of a recording but failed to allege defendants' intent to commit a crime or tort *at the time of the recording*. Defendant's insistent reliance on *Desnick v. Am. Broad. Cos. Inc.*, 44 F.3d 1345 (7th Cir. 1995) is erroneous. *See* Mot. at 6. There, plaintiffs' ECPA claim was rejected because they alleged that defendants decided to use the intercepted recording to commit defamation <u>*after*</u> the recording was

made. *Desnick*, 44 F.3d at 1353. Therefore, defendants lacked the requisite intent to commit a tort at the time of the recording. *Id.* ("The purpose, by the plaintiffs' own account, was to see whether the Center's physicians would recommend cataract surgery on the testers."). As explained, Plaintiffs' claims satisfy the crime-tort exception because they allege Defendant intended to violate HIPAA when it installed tracking tools and before any interception had taken place. Defendant's remaining authorities are similarly distinguishable. *See* Mot. 7-8 (citing *Medical Lab. Mang't Consultants v. Am. Broad. Cos., Inc.*, 30 F. Supp. 2d 1182, 1205 (D. Az. 1998) (holding plaintiffs failed to allege defendants' intent to commit a tort at the time of recording); *Planned Parenthood Fed. Of Am., Inc. v. Newman*, 51 F.4th 1125, 1135-36 (9th Cir. 2022) (holding plaintiffs failed to allege a criminal purpose at the time of the recording, independent of the intent to record)).

Moreover, Edward-Elmhurst identifies cases where courts held that intercepting communications for digital marketing is not actionable under the crime-tort exception. *See* Mot. at 9. Many of these cases are inapposite because the data at issue was not IIHI, and the defendants were not HIPAA-covered entities. Therefore, the plaintiffs could not establish the requisite crime or tort for an unlawful disclosure of commercial data. *See, e.g.*, *In re DoubleClick, Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 506 (S.D.N.Y 2001) (discussing FTC investigation that found defendant "never used or disclosed consumers' PII for purposes other than those disclosed in its privacy policy" & created profiles of "only non-PII"); *Katz-Lacabe v. Oracle America, Inc.*, 2024 WL 1471299, at *3 (N.D. Cal. Apr. 3, 2024) (finding "[plaintiffs] do not plausibly allege Oracle thought any such efforts were tortious or point to any authority for the proposition such collection or sales was unlawful."). And where the data implicated IIHI, in cases granting motions to dismiss, plaintiffs' allegations did not allege that defendants' purpose was to violate HIPAA. *See* ECF No. 59 (citing *Doe v. Genesis Health Sys.*, 2025 WL 1000192, at *9 (C.D. Ill. Mar. 18, 2025)).

Finally, while Edward-Elmhurst cites non-binding cases in which ECPA claims were dismissed under arguably similar facts, a more robust body of authority exists on indistinguishable allegations where courts apply the same well-reasoned analysis employed by this Court.[3] Accordingly, the Court correctly applied the law in denying Edward-Elmhurst's Motion to Dismiss and Defendant's Motion for Reconsideration should be denied.

## II. IN THE ALTERNATIVE, THE COURT SHOULD NOT CERTIFY THE TORTIOUS OR CRIMINAL CONDUCT QUESTION TO THE SEVENTH CIRCUIT FOR INTERLOCUTORY REVIEW.

In the event that the Court denies its request for reconsideration, Edward-Elmhurst also asks the Court to certify the following question to the Seventh Circuit for immediate appellate review: "Whether Stein and Miller's allegations about alleged illegal wiretapping made in connection with digital marketing on Edward-Elmhurst's public websites state a plausible claim for relief under the federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, as a matter of law." Mot. at 10. Edward-Elmhurst's request for interlocutory certification of the ECPA claim is unwarranted and should be denied. Defendant does not dispute that the ECPA has a crime-tort exception—rather, it disagrees with this Court's determination that, under Rule 12(b)(6), Plaintiffs sufficiently pled

[3] *See, e.g.*, *Mayer v. Midwest Physician Admin. Servs., LLC*, 2025 WL 963779 (N.D. Ill. Mar. 31, 2025); *W.W. v. Orlando Health, Inc.*, 2025 WL 722892 (M.D. Fla. Mar. 6, 2025); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719 (C.D. Cal. Mar. 2, 2025); *Strong v. LifeStance Health Grp. Inc.*, 2025 WL 317552 (D. Ariz. Jan. 28, 2025); *Jarrell v. Adena Sys.*, 2025 WL 81305 (S.D. Ohio Jan. 13, 2025); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488 (C.D. Cal. Jan. 13, 2025); *K.L. v. Legacy Health*, 2024 WL4794657 (D. Or. Nov. 14, 2024); *Castillo v. Costco Wholesale Corp.*, 2024 WL4785136 (W.D. Wash. Nov.14, 2024); *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024); *Murphy v. Thomas Jefferson Univ. Hosps. Inc.*, 2024 WL 4350328 (E.D. Pa. Sept. 30, 2024); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024); *M.R. v. Salem Health Hosps. & Clinics*, 2024 WL 3970796 (D. Or. Aug. 28, 2024); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369 (S.D.N.Y. 2024); *Kurowski v. Rush Sys. for Health*, 2024 WL 3455020 (N.D. Ill. July 18, 2024); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941 (N.D. Ill. July 9, 2024); *Sweat v. Houston Methodist Hosp.*, 2024 WL 3070184 (S.D. Tex. June 20, 2024); *Hartley v. Univ. of Chicago Med. Ctr.*, 2024 WL 1886909 (N.D. Ill. Apr. 30, 2024); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916 (D. Minn. 2024).

facts to support a plausible claim for violation of the ECPA. Edward-Elmhurst does not satisfy any of the requirements of § 1292(b) and therefore its certification request should be denied.

**A. Application of the Crime-Tort Exception Requires Factual Investigation.**

First, Edward Elmhurst attempts to (mis)construe the purportedly controlling question as one that "involves the key issue on the key claim in the case and whether or not plaintiffs have stated a plausible claim on that claim as a matter of law under Rule 12(b)(6)." Mot. at 10. Although Edward-Elmhurst asserts that its question is a purely legal one, its question is, in reality, a mixed question of fact and law that turns on a full assessment of the factual record thus certification under § 1292(b) is not warranted. Defendant's purported question is a transparent attempt to revisit the Court's opinion. In effect, Edward-Elmhurst contends that denial of a motion to dismiss under Rule 12(b)(6) must be immediately appealable, which is not a proper use of § 1292(b).

In a similar case concerning a healthcare defendant's use of tracking technology to collect IIHI in violation of HIPAA, Judge Kennelly denied a request for interlocutory appeal. *See Kurowski v. Rush Sys. for Health*, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) (noting that the question presented asked "whether plaintiffs can adequately state a Wiretap Act claim under the tortious or criminal conduct exception"). Judge Kennelly concluded that "an answer to Rush's question presented necessarily requires careful engagement with the specific facts alleged in this case" and "even if the Seventh Circuit were to conclude that 'purpose' under section 2511(2)(d) requires knowledge that the party's intended act is illegal, Kurowski's claims would survive." *Id.*; *see also Cooper v. Mount Sinai Health Sys., Inc.*, 1:23-cv-09485, ECF No. 41 (S.D.N.Y. Sept. 6, 2024) (denying motion for interlocutory appeal in pixel-tracking case).[4]

---

[4] More generally, where a question that a defendant seeks to certify implicates delving into the

As in *Kurowski*, Edward-Elmhurst's question does not withstand the first element of a § 1292(b) analysis. Questions regarding the intricate details of Edward-Elmhurst's digital marketing, its purpose in collecting IIHI and PHI without consent, the full extent of its interceptions and disclosures, and its ultimate profit and revenue from Plaintiffs' medical information are fact dependent and require discovery. *See, e.g.*, *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023) ("[D]etermination of [defendant]'s actual purpose for ... using the Pixel Code requires a factual undertaking."); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 381 (S.D.N.Y. 2024) (explaining that "Mount Sinai will be at liberty to attempt to establish in discovery facts supporting, *inter alia*, that, to the extent it took the above actions, it did so without intending to facilitate Facebook's receipt of confidential patient information or to financially benefit").

This case is not as simple as Defendant wishes to portray it, nor is its alleged conduct as benign as Edward Elmhurst suggests. Rather, this case is based on an application of the law to its specific facts and would require the Seventh Circuit to review additional discovery and the record in the context of the ECPA. *See also Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. 2023) (finding intent within the context of the ECPA "turn[s] on dispute disputed questions of fact that need development on a full evidentiary record."). As such, there is no pure question of law that the Seventh Circuit could decide without having to study the record.

Rather than analyze *Kurowski*, Edward Elmhurst relies on numerous inapposite cases that did not require fact-based determinations. *See* Mot. at 10. Instead, the cases Defendant selected

---

record, that fact weighs against certification. *See, e.g.*, *U.S. Commodity Futures Trading Comm'n v. Kraft Foods Grp., Inc.*, 195 F. Supp. 3d 996, 1002 (N.D. Ill. 2016) (finding question presented "not a question of law because there is an essential factual predicate that must be determined by the appellate court before making any meaningful decision").

required determining strictly legal issues, such as whether a private right of action existed under a statute (*e.g.*, *BT Bourbonnais Care, LLC v. Norwood*, 866 F.3d 815, 820 (7th Cir. 2017)) or the legislative meaning in a statue (*e.g.*, *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 539 (7th Cir. 2012), *Woodman's Food Mkt., Inc. v. Clorox Co.*, 2015 WL 13547584, at *1 (W.D. Wis. July 17, 2015)).

The additional cases Edward Elmhurst relied on had interlocutory appeal granted due to a change in the law. *See, e.g.*, *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000) ("The possibility that recent ERISA decisions would lead us to abandon *Travel All Over the World* and follow *Taj Mahal Travel* (which declined to follow this circuit's position) is what induced the district court to certify its order for interlocutory appeal.") (citations omitted); *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) (grating interlocutory appeal for interpretation of a statute, not the mere application of a legal standard & explaining "Twombly is a recent decision, and its scope unsettled"). Here, there is neither a legal question for this Court to seek clarification from the Seventh Circuit nor a change in the law. Thus, these cases should not alter the Court's analysis that Defendant's request for interlocutory appeal fails the first element.

Edward Elmhurst may not like this Court's Order, but disagreeing with the Court's application of the law to the facts of this case is insufficient to establish a certifiable question. Accordingly, this Court should conclude that Edward Elmhurst's dissent with the Court's well-reasoned analysis is not properly brought under § 1292(b).

**B. There is no Substantial Ground for Difference of Opinion.**

Second, Edward Elmhurst fails to meet the second requirement for interlocutory appeal because its arguments are simply a veiled attempt to have another court revisit the same arguments it made on its motion to dismiss. Whether an issue is sufficiently "contestable" to justify

interlocutory appeal is itself "open to interpretation." *Flynn v. Exelon Corp.*, 2022 WL 267915, at *3 (N.D. Ill. Jan. 28, 2022). Generally, an issue is "contestable" where "there are substantial conflicting decisions regarding the claimed controlling issue of law, or the question is not settled by controlling authority and there is a substantial likelihood that the district court ruling will be reversed on appeal." *Id.* at *3 (cleaned up). Establishing this criterion is a "heavy burden." *Id.*

Edward Elmhurst argues this criterion is satisfied because some courts nationwide have decided the question of how the crime-tort exception applies differently. As already explained, many of the cases Edward Elmhurst relies on to support its argument are inapposite and support Plaintiffs' argument here. *See*, *supra*, § I; *see also* Mot. at 12, n. 2 (identifying cases where courts denied motions to dismiss ECPA claims). And "the fact that an issue is unsettled does not necessarily make it suitable for § 1292(b) certification." *T.S. v. Cnty. of Cook, Illinois*, 568 F. Supp. 3d 940, 942 (N.D. Ill. 2021). "If the contrary were true, an interlocutory appeal would be authorized (for example) any time a relatively new statute is applied for the first time, or even the second or third time, in a particular context." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 2012 WL 13209677, at *1 (N.D. Ill. Dec. 10, 2012).

What is more, "[e]ven when a controlling court has not definitively decided an issue, the party requesting certification still must demonstrate a 'substantial likelihood' that the district court ruling will be reversed on appeal." *Leff v. Deutsche Bank AG*, 2009 WL 4043375, at *3 (N.D. Ill. Nov. 20, 2009). In the body of its argument, Edward Elmhurst does no more than identify one out-of-circuit district court case that it claims supports its argument that Plaintiffs cannot prove Edward Elmhurst collected their medical information to commit a criminal or tortious act. *See* Mot. at 11-12 (citing *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *2 (W.D.N.C. Mar. 20, 2025)). In *Roberts*, the court concluded that defendant could not simultaneously have an

improper motive in collecting its patient's medical information without consent because defendant posted a notice years later on its website that it collected the relevant medical information, including inside its password-protected patient portal, to "help operate certain features of our Patient Portal and enhance the online experience for users." *Id.* at *3.[5] Not only is *Roberts* incorrectly decided, but the facts before the Court in this case are different.

Edward Elmhurst ignores the well-settled principle that "it is beyond dispute that interlocutory appeal is unjustified, inefficient, and unnecessary when the movant has not set forth substantial conflicting decisions regarding the claimed controlling issue of law." *T.S.*, 568 F. Supp. 3d at 942, n.3 (citation omitted). As explained, the Court adopted the majority view in holding that Plaintiffs sufficiently alleged the crime-tort exception, and Edward Elmhurst has not met its burden to identify "substantial conflicting decisions" justifying an immediate appeal.

**C. Interlocutory Appeal will Not Materially Advance the Litigation.**

Finally, Edward Elmhurst misses the mark on the third requirement for interlocutory appeal. Instead of demonstrating how interlocutory appeal would "speed up the litigation," Edward Elmhurst relies on readily distinguishable case law and argues that "damages will be difficult to show." Mot at 13-14. In this case, immediate appeal will not materially advance the ultimate termination of the litigation or "promise to speed up the litigation." *WEC 98C-5 LLC v. Saks Inc.*, 2023 WL 11884362, at *3 (N.D. Ill. Jan. 20, 2023) (citation omitted). Rather, an interlocutory appeal runs the risk of delaying resolution and the progress of the case. *See, e.g.*, *Brodsky v.*

---

[5] Edward Elmhurst appears to again contend that its purpose in digital marketing to Plaintiffs and the public generally should sanitize its interception. This is not so, as "the mere existence of a lawful purpose alone does not sanitize an interception that was also made for an illegitimate purpose." *Lugo v. Inova Health Care Servs.*, 2025 WL 905191, at *8 (E.D. Va. Mar. 25, 2025) (cleaned up).

*HumanaDental Ins. Co.*, 2014 WL 4813147, at *4 (N.D. Ill. Sept. 29, 2014) (explaining that "the disfavor towards interlocutory appeals arises from the fact they interrupt litigation and by interrupting delay its conclusion") (citation omitted).

Edward Elmhurst first relies on *Sterk* to assert that because (in its opinion) this case is purely about statutory damages, interlocutory appeal should be granted. Mot. at 13 (citing *Sterk*, 672 F.3d at 536). However, in *Sterk*, certification for interlocutory appeal was granted to decide a purely legal question, not whether the underly claim was sufficiently pled. *Id.* Defendant's minimization of this case as one only about statutory damages is far afield from its reality. This case concerns not just the ECPA, but also Plaintiffs remaining claim—negligence. To proceed with their negligence claim, Plaintiffs require similar discovery and related litigation to that necessary for the development of their ECPA claim. Interlocutory appeal may also create a bifurcated case where discovery on Plaintiffs' negligence claim proceeds in this Court while the appeal is pending but discovery into the ECPA claim is stayed. Accordingly, interlocutory appeal will delay resolution and create impediments to discovery. Through discovery—not interlocutory appeal—the parties will be able to further develop their theories of the case and arguments for summary judgment, class certification, and trial.

Further, questions of damages that Defendant is concerned about require discovery, experts, and actual settlement negotiations. Through discovery and expert reports, Plaintiffs will be able to demonstrate the cognizable value of their damages to support their negligence claims. *Compare* Mot. at 14 (citing cases granting motion to dismiss negligence claims), *with Stein*, 2025 WL 580556, at *9 (denying motion to dismiss negligence claim).[6] Moreover, Edward Elmhurst

[6] Edward Elmhurst's so-called damages argument—which does not go to the third element of a

has not yet provided the total number of patients and prospective patients whose PHI and IIHI was captured by Defendant and disclosed to third parties via tracking technologies without their consent. And while the potential damages under the ECPA are up to $100 per day or $10,000 per violation, many tracking technologies cases against healthcare defendants have settled for less including those without an ECPA claim. *See, e.g.*, *In re Novant Health, Inc.*, 1:22-cv-00697, ECF No. 52-1 (M.D.N.C. Oct. 12, 2023) (settling similar case with ECPA claim for approximately $5 per class member); *John v. Froedtert Health, Inc.*, 2023CV001935, ECF No. 40 (Milwaukee Cty. Cir. Ct. Case Sept. 29, 2023) (settling for same amount per class member without an ECPA claim).

Ultimately, Edward Elmhurst's request for interlocutory appeal would "only prolong the life of the litigation at all the parties' expense." *Isaacson v. Keck, Mahin & Cate*, 875 F. Supp. 478, 481 (N.D. Ill. 1994). The Court should not entertain Edward Elmhurst's dilatory tactics, which will only serve to cause unnecessary delays in these proceedings and waste overburdened judicial resources. *See, e.g.*, *Consumer Fin. Prot. Bureau v. TransUnion*, 674 F. Supp. 3d 467, 471 (N.D. Ill. 2023).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Honorable Court deny Edward Elmhurst's request for reconsideration and its request for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and award all such other relief as is equitable and just.

Date: April 25, 2025

Respectfully submitted,

By: /s/ *David S. Almeida*

**ALMEIDA LAW GROUP LLC**

§ 1292(b) analysis—is just further disagreement with the Court's Opinion. However, other courts nationwide have allowed negligence claims to proceed in similar cases including after this Court's Order. *See, e.g.*, *Mayer*, 2025 WL 963779, at *5 (finding plaintiffs alleged negligence in Illinois).

David S. Almeida (ARDC 6285557)
Britany A. Kabakov (ARDC 6336126)
849 W. Webster Avenue
Chicago, Illinois 60614
(708) 529-5418
david@almeidalawgroup.com
britany@almeidalawgroup.com

**STEPHAN ZOURAS, LLC**
James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
Michael J. Casas
222 W. Adams St, Suite 2020
Chicago, Illinois 60606
312.233.1550
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com
mcasas@stephanzouras.com

*Attorneys for Plaintiffs & the Putative Class*

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on April 25, 2025, I filed the foregoing with the Clerk of the Court using the Court's electronic filing system which will send such filing to all attorneys of record.

*/s/ David S. Almeida*