**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| ARNOLD STEIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 23-cv-14515 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| EDWARD-ELMHURST HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Arnold Stein and others brought a claim against Edward-Elmhurst Health under the Electronic Communications Privacy Act ("ECPA"). They alleged that MyChart shared their personal information with Facebook without their consent. EEH moved to dismiss, and this Court denied the motion.

EEH responded by filing a motion for reconsideration, or in the alternative, a motion for an interlocutory appeal. EEH basically asks this Court to take another look, and give it another think. This Court gave it another look, and sees things the same way.

This Court read the statute again, and the adjectives haven't moved. "Criminal or tortious" modifies "act," not "purpose." The carve-out in the statutory text applies to a "criminal or tortious act," and does not require a criminal or tortious purpose. The *act* must be criminal or tortious, but the *purpose* doesn't have to be criminal or tortious.

For the reasons stated below, the motion for reconsideration is denied. But this Court will grant the request for certification of an interlocutory appeal under 28 U.S.C. § 1292(b).

### Background

The Court assumes that any interested reader is familiar with the backstory of the case, including the ruling on the motion to dismiss. *See generally Stein v. Edward-Elmhurst Health*, 2025 WL 580556 (N.D. Ill. 2025).

In a nutshell, Arnold Stein and Diane Miller shared their medical information with EEH, using a web-based portal called MyChart. *Id.* at *1. They allege that MyChart contains embedded software that automatically transmits their personal information to Facebook. *Id.* They allege that sharing their personal information with Facebook violates the Health Insurance Portability and Accountability Act, also known as HIPAA.

Stein and Miller responded by filing a complaint on behalf of themselves and a putative class. They allege a violation of the Electronic Communications Privacy Act, which is sometimes called the Wiretap Act. *Id*. at *2. They bring two state-law claims, too.

EEH moved to dismiss, arguing that it has no liability because it falls under the statute's one-party consent rule. Plaintiffs responded by invoking the so-called crime-tort exception. As they see things, EEH intercepted their communications for the purpose of committing an act that is a crime or tort (that is, sharing their personal information in violation of HIPAA).

This Court denied the motion to dismiss after giving the statutory text a close look. EEH now seeks reconsideration or, in the alternative, an early trip to the Seventh Circuit.

**Analysis**

## I.      Reconsideration

A district court can revisit its orders any time before the entry of final judgment. Interlocutory orders "may be revised at any time before the entry of judgment adjudicating all the claims." *See* Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).

But a district court needs a reason – a *good* reason – to give a past ruling a fresh look. "A motion to reconsider an interlocutory order, however, serves a limited purpose, and it is not a vehicle merely to rehash an argument the court has already rejected or to present legal arguments that were not presented earlier." *Brodsky v. HumanaDental Inc. Co.*, 2016 WL 9212001, at *1 (N.D. Ill. 2016).

A good example is a "significant change in the law or facts since the parties presented the issue to the court." *See United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Other permissible grounds include the court's misunderstanding of "a party's arguments, or a party's contention that the court ruled on an issue that was not properly before it." *Id.*

Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *See Patrick v. City of Chicago*, 103 F. Supp. 3d 907, 911–12 (N.D. Ill. 2015). A party seeking reconsideration "bears a heavy burden." *Id.* at 912.

District court judges are in the business of getting things right, as best they can. Still, there are limits on how many times a district court can look at the same issue in the same case. Judicial resources don't grow on trees.

Every minute spent by a district court judge is zero sum. That is, any time spent working on one case is time that a judge can't spend working on every other case. Every motion for reconsideration imposes a cost – and that cost is paid by every other litigant in every other case. Everyone else foots the bill when a litigant requests a do-over.

EEH takes issue with this Court's reading of the statutory text covering the crime-tort exception. It cites a smattering of district court cases from other jurisdictions, none of which are binding. By and large, EEH repeats arguments that it made before, and offers a few more cases.

This Court took another look at the statute. Nothing has changed. The key phrase is "criminal or tortious act." *See* 18 U.S.C. § 2511(2)(d). The words "criminal or tortious" modify "act," not "purpose."

Taking a step back, the text of the ECPA has a few twists and turns. The text creates a rule, and an exception, and a carve-out to the exception.

The ECPA makes it unlawful to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." *See* 18 U.S.C. § 2511(1)(a).

At first blush, the word "intercept" sounds like it means taking something away from someone else. For example, F-22s might *intercept* a bomber from an adversary who strayed over all-American territory in the arctic circle. Or a cornerback from the Chicago Bears might *intercept* a pass thrown by the Green Bay Packers.

But under the statute, "intercept" means little more than acquire. The ECPA defines "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *See* 18 U.S.C. § 2510(4).

The statute covers acquiring the contents of a communication. And a party to a communication does just that. If someone gives you an earful on the phone, you have acquired what they had to say. So, in that sense, you "intercepted" their communication.

That broad definition has ripple effects when it comes to liability. Strictly speaking, a party could "intercept" its own communications with someone else, because a party can acquire its communications with others.

So the ECPA has an exception. Under the so-called "one-party consent rule," a party can lawfully intercept its own communications, meaning communications with someone else. *See* 18 U.S.C. § 2511(2)(d).

"It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication *where such person is a party to the communication* or where one of the parties to the communication has given prior consent to such interception *unless* such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* (emphasis added).

But the exception has a carve-out, as revealed by the word "unless." The one-party consent rule does not apply if the communication "is intercepted for the purpose of committing any criminal or tortious act." *Id.* That's the crime-tort exception.

Importantly, the interception itself cannot count as the "criminal or tortious act." For the crime-tort exception to apply, the party must intercept a communication for the purpose of committing some *other* crime or tort.[1] *See Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010).

In short, the ECPA makes it unlawful to intentionally intercept communications. But a party can intercept its own communications with someone else, unless it does so for the purpose of doing an act that is a crime or tort. And the crime or tort can't be the interception itself.

EEH offers a competing reading of the statute, but it's not much of a contest. As EEH reads it, the crime-tort exception applies only if the party intercepted the communication for a criminal or tortious purpose.

EEH believes that the crime-tort exception requires an unlawful *purpose*. "Under all accounts, the focus of the tortious or criminal conduct exception analysis is on the purpose: was the defendant's alleged purpose in making the recording unlawful? If the purpose was lawful, then the exception applies, even if the defendant's actions in using the recording might ultimately turn out to violate some other law." *See* Mtn., at 2 (Dckt. No. 57).

And here, EEH argues that it didn't send anything to Facebook for an unlawful purpose. It sent information to Facebook for "marketing" purposes. *Id.* at 3, 8.

That interpretation would move around the words in the statute and reshuffle the textual deck. It would change the placement of the adjectives. And changing the placement would change the meaning.

The phrase "criminal or tortious" modifies "act," not "purpose." *See* 18 U.S.C. § 2511(2)(d). The statute requires a "criminal or tortious act," not a criminal or tortious purpose. *Id.* The noun "purpose" has no adjectives, but the noun "act" does.

---

[1] EEH has it wrong when it argues that "[u]nder the Court's reading, the exception once again collapses in on itself." *See* Def.'s Mem., at 2 (Dckt. No. 57). EEH says that the Court's holding means that "the act of recording could also be the act that triggers the exception." *Id.* Not so. The Court did not hold that EEH's interception of Plaintiffs' information, without more, is enough to trigger the crime-tort exception. In fact, this Court said the opposite: "The crime or tort can't be the interception itself. . . . There is no double dipping – the conduct must violate something else for the crime-tort exception to apply." *See* 2/21/25 Mem. Opin. & Order, at 6–7 (Dckt. No. 53).

EEH's reading would move up the adjectives to modify "purpose," which currently stands unadorned. But rejiggering and reordering the words would change its meaning. The placement of words affects the meaning of text. *See McCall v. Marine Ins. Co.*, 12 U.S. 59, 66 (1814) (Story, J.) ("The grammatical order of the words and the coherence of the sentence require a different construction."); *Cooper v. Dobson*, 157 U.S. 148, 152 (1895) ("As the order of the words in the act of 1890 is 'camel, goat, alpaca,' it is obvious that [C]ongress, in that act, did not have in view the existence of such an animal as an 'alpaca goat.'").

There is a difference between a chef making a sloppy sandwich, and a sloppy chef making a sandwich.

Adding "criminal or tortious" to "purpose" would add a limitation that isn't there. Congress could have limited the exception to a party who acts with an unlawful purpose. But it didn't. The statutory text includes no such restriction. EEH's reading would inject a *mens rea* component into the statute that does not exist.

The question is not whether the *purpose* is unlawful. The question is whether the *act* is unlawful. The statute requires a purpose to do an unlawful act, not an unlawful purpose to commit an act.

Maybe EEH believes that "criminal or tortious" applies to both nouns. That is, maybe EEH believes that the statute requires a criminal or tortious *purpose* to commit a criminal or tortious act. But that's not what the statute says, and this Court takes the text as it finds it.

At some level, relocating the adjectives might seem like a small thing. But it isn't. This case is a perfect example. EEH believes that it did not violate the Electronic Communications Privacy Act when it shared Plaintiffs' personal information with Facebook for marketing purposes. EEH thinks that it did nothing wrong because it did not intend to commit a crime or a tort.

Maybe that's a defensible position about where to draw the line. But Congress drew the line elsewhere.

A purpose to commit an act that is a crime or tort is different than a criminal or a tortious purpose. Requiring a criminal or tortious purpose significantly raises the bar for liability.

By way of illustration, imagine someone driving down the highway past a sign that says "65 mph." A driver who blows past the sign at 100 mph could get a ticket for speeding. A purpose to violate the speed limit isn't necessary for liability. The driver could get a ticket even if the driver got carried away while jamming to the Rolling Stones, and lost track of his speed. But under EEH's reading, the driver could get away scot-free unless he had the purpose of violating the speed limit.

At best, EEH cites fragmentary dicta from a few cases. But the Seventh Circuit has not squarely addressed the issue. *See In re High Fructose Corn Syrup Antitrust Litigation*, 216 F.3d 621, 626 (7th Cir. 2000); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353 (7th Cir. 1995);

5

*Thomas v. Pearl*, 998 F.2d 447, 451 (7th Cir. 1993). The Seventh Circuit has barely waded into the issue, let alone done a deep dive.

Admittedly, courts are split on how best to read this statute. Both parties have submitted supplemental authority exposing the widening divide.

Some courts hold that the statute requires a criminal or tortious act (like this Court). *See Doe v. Deaconess Ill. Union Cty. Hosp., Inc.*, 2025 WL 2771415 (S.D. Ill. 2025); *Juenger v. Deaconess Health Sys., Inc.*, 2025 WL 2780221 (S.D. Ill. 2025); *Hartley v. Univ. of Chicago Med. Ctr.*, 2025 WL 2802317 (N.D. Ill. 2025); *Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802 (N.D. Cal. 2025); *Vriezen et al. v. Infinite Health Collaborative P.A.*, 2025 WL 2992204 (D. Minn 2025).

Other courts hold that the statute requires a criminal or tortious purpose. *See* Notices of Supplemental Auth. (Dckt. Nos. 59, 61, 65–66, 70); *Jane Doe v. Genesis Health Sys.*, 2025 WL 1000192 (C.D. Ill. 2025); *Goulart v. Cape Cod Healthcare, Inc.*, 2025 WL 1745732 (D. Mass. 2025); *Jane Doe v. Lawrence Gen. Hosp.*, 2025 WL 2808055 (D. Mass. 2025) (report and recommendation adopted in part, rejected in part); *Sweat v. Houston Methodist Hosp.*, 2025 WL 2697111 (S.D. Tex. 2025); *Jane Doe v. Talkiatry Mgmt. Services, LLC*, 2026 WL 206483 (C.D. Cal. 2026).

In the end, this Court gave a second look to the statute, and ends up in the same place. The statute requires a "criminal or tortious act," not a criminal or tortious purpose. So a defendant is not automatically off the hook if it lacked a criminal or tortious purpose.

## II. Interlocutory Appeal

The next question is whether this Court should certify the question to the Court of Appeals. This Court agrees to certify the issue for an interlocutory appeal.

A district court may certify an otherwise non-appealable order for appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b).

If a district court certifies a question for an interlocutory appeal, the Court of Appeals can decide for itself whether to hear the case and give an early answer. "A court of appeals, may, in its discretion, permit an appeal to be taken from an order certified for interlocutory appeal by a district court." *In re Lion Air Flight JT 610 Crash*, 110 F.4th 1007, 1011 (7th Cir. 2024) (citing 28 U.S.C. § 1292(b)).

The Seventh Circuit has explained that certification under § 1292(b) is appropriate for pure questions of law. *See Ahrenholz v. Bd. of Trs. of Univ. of Illinois*, 219 F.3d 674, 677 (7th Cir. 2000). "The idea was that if a case turned on a question of pure law, something that the court of appeals could decide quickly and cleanly without having to study the record, the court should be enabled to do so without having to wait till the end of the case." *Id.*

Interlocutory appeals aren't the norm. Most of the time, it makes sense for a case to go the distance in the lower court before going to the Court of Appeals.

Interlocutory appeals create delays and impose costs on the parties and on the judiciary itself. Oftentimes, a case needs the development of a full factual record before an appellate court can weigh in. Lots of cases end up settling, too, so interlocutory appeals could create appellate work that otherwise wouldn't exist.

But interlocutory appeals have their place. Class actions can create hydraulic pressure on defendants to settle, given the amount at stake. *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995) (discussing the "intense pressure to settle" class action cases). Sometimes an early resolution can save resources, depending on the outcome on appeal. Getting certainty sooner rather than later can promote settlement by giving a dose of reality, too.

Here, the parties have teed up a clean legal issue. The Seventh Circuit has not spoken to the question at hand. And courts across the country are all over the map when it comes to the crime-tort exception. Lots of courts hold that the statute does not require a criminal or tortious purpose. But plenty of courts have come out the other way.

Candidly, this Court doesn't view the substantive issue at hand as a close question. But other courts disagree. Overall, this Court can see the value of an early resolution by the Court of Appeals.

For those reasons, this Court certifies the following question to the Seventh Circuit: "Whether the crime-tort exception to the one-party consent rule in the Electronic Communications Privacy Act applies when a complaint alleges that the defendant acted with a lawful purpose, and does not allege that a defendant acted with a criminal or tortious purpose?"

## Conclusion

For the foregoing reasons, Defendant's motion for reconsideration is denied. But this Court grants the request for certification of an interlocutory appeal.

Date:   March 3, 2026

_____
Steven C. Seeger
United States District Judge

7